## *TURNER'S EXECUTOR *vs.* JOS. J. TURNER ET AL.

*Partnership—Distribution of Losses Among Partners—Insufficient Proof of Alleged Agreement by Partner Contributing the Capital to Bear Certain Losses—Secondary Evidence of Contents of Lost Account Books—Estoppel—Interest.*

When there are no articles of copartnership between partners and the entries on the firm's books show that the profits were equally divided between them, the presumption is that losses should be borne equally, and the evidence to establish a different rule for their distribution should be clear and convincing.

Entries on the books of a firm distributing shares of profits and losses, when acquiesced in are as conclusive of the rights of the partners as if they had been prescribed in a regular contract.

When after dissolution of a firm one of the partners writes letters acknowledging an indebtedness on his part to the firm and also offers to pay such indebtedness to the executor of a deceased partner, as shown by a trial balance produced by him, he is estopped, in the absence of any evidence of mistake, to say that the trial balance was erroneous and that he did not owe the debt with which he was charged.

When the defendants in their answers to a bill for an account of partnership affairs admitted that they did not have the books of the firm in their possession and did not know where they were, it is not necessary

*The docket title of this case is *The Safe Deposit and Trust Co., Executor of Joshua J. Turner,* v. *Joseph J. Turner et al.*

for the plaintiff to give them notice to produce the books, in order to lay the foundation for secondary evidence as to their contents.

When it is proved that the account books of a firm have been lost and not found after diligent search for them at the place where last seen, trial balances and balance sheets taken from the books and shown by the testimony of the person who made them to be accurate, are admissible as secondary evidence to prove the contents of the lost books.

A father contributed the entire capital of a firm in which he and his two sons were the partners. No articles of copartnership were signed. The books of the concern were kept upon the theory that profits and losses were to be equally divided among the three partners. The firm was dissolved early in the year 1888 by the withdrawal of the father and upon his death subsequently the bill in this case was filed by his executor for an account of the partnership affairs. Trial balances taken from the books by the firm's book-keeper at the end of 1887 showed that both of the sons were indebted to the firm on account of losses but the books themselves could not be found. The defendants alleged in their answers that their father had orally agreed that the profits of the business should be equally divided among the three partners, but that each of the sons should be entitled to draw $2,500 annually and that losses which would reduce their share of the profits below that sum should be charged to and borne by him. The firm's book-keeper testified that the senior partner showed him in 1885 or 1886 an unexecuted paper providing that each of his sons should receive $2,500 *per annum* from the business, without liability on their part for its losses, but the father directed him to continue to keep the books as formerly, by which method the sons were charged with their proportion of losses. By his will made in 1886, the father provided that such sums of money as his sons might owe to him should constitute a part of the principal of his estate and that no payments should be made to either of them until the same should be paid. There was no evidence that either of the sons objected to the mode in which the books were kept by which all of the partners were charged with losses in equal proportions. One of the sons after his father's death acknowledged the accuracy of the charge against him as shown by the trial balance and offered to pay the same, and the other son made no objection during the continuance of the partnership to the state of the firm's books upon which he was charged with his withdrawals of money and with one-third of the losses. The sons did not attempt to support by their own testimony the agreement with their father as set forth in their unsworn answers. *Held*, that the evidence fails to establish the agreement set up in the answers or to overcome the presumption that the losses were to be borne equally by the partners, and that the executor of the deceased partner is entitled to a decree against the defendants for the sums shown by the last trial balance to be due to the deceased, but in view of the circumstances of the case interest will not be charged thereon.

Appeal from the Circuit Court of Baltimore City (Sharp, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John Prentiss Poe* and *W. Cabell Bruce*, for the appellant.

*Bernard Carter* and *A. Leo Knott*, for J. J. Turner.

*A. C. Trippe*, for Louis I. Turner.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant corporation, as executor of the last will of the late Joshua J. Turner, filed the bill in this case against the appellees for an account of the affairs of a partnership which existed between them and the testator in his lifetime.

The bill, after alleging the death of the testator leaving a last will, of which a copy is filed as an exhibit, and the qualification of the plaintiff as executor, avers that the testator and the defendants, who are his two sons, conducted the business of manufacturing and selling fertilizers as copartners from January, 1883, to February, 1888, and that at the dissolution of the firm both of the defendants were largely indebted to the testator. That the defendant Joseph J. Turner owed him on account of the partnership about $2,600, and the defendant Louis I. Turner owed him on the same account about $5,000, but there had been no ascertainment of the precise amount of such indebtedness nor any final accounting of the affairs of the firm, although all debts due by it had been paid and all debts due to it collected.

It is further alleged in the bill that after the dissolution of the firm its books and papers were left at its former place of basiness on Pratt street in Baltimore in the custody of the defendant Joseph J. Turner, who continued to conduct the fertilizer business at that place with F. A. Luchesi, the former book-keeper of the firm as his partner. That the plaintiff after the grant to it of letters testamentary made demand upon the defendants for the production of said books and papers but they did not produce them, Joseph J. Turner, in whose possession they had been left asserting that they had been lost

and could not be found.    That the defendant Louis I. Turner had produced out of his possession and permitted the plaintiff to inspect and copy, original trial balances and balance sheets of the firm's business down to December 31st, 1887, made by F. A. Luchesi, its book-keeper, which showed that at that time Joseph J. Turner was indebted to the firm to the extent of $23,900 or thereabout and Louis I. Turner was indebted to it to the extent of $4,900 or thereabout.    The copies made by the plaintiff of the trial balances and balance sheets are filed as exhibits with the bill.    The prayer of the bill is for an account and for further relief, and certain interrogatories addressed to the defendants were appended to it.    The bill was not verified nor did it call for answers under oath to it or to the interrogatories.

The following clause appears in the will of the late Joshua J. Turner, the appellant's testator:

"Such sums of money as my said sons or the husbands of my said daughters may owe to me are to constitute a part of the principal of my estate and no payments are to be made to either of my sons, or to my daughters or either of them until my said sons and my said daughters husbands shall have fully paid and satisfied the same."                    .

Both of the defendants answered the bill and the interrogatories.    In their answers they admit that the partnership existed between them and their father for the greater portion of the time mentioned in the bill, and that at its dissolution its books and papers were left in the Pratt street office which thereafter remained in the possession and occupancy of the defendant Joseph J. Turner and his partner, F. A. Luchesi. Joseph J. Turner also admits that demand was made upon him by the plaintiff for the books and that he failed to produce them, asserting that he had not seen them for more than a year and did not know where they were.    Both defendants deny that the trial balances and balance sheets made by Luchesi show the true state of the partnership accounts and they assert in a general way that at the dissolution of the firm there was a full settlement of accounts between the partners,

but do not state what were the nature and terms of the alleged settlement. They both deny that there was anything due from them to their father at the time of his death.

Both of the answers further aver that, although no written articles of copartnership were ever executed between the defendants and their father he agreed with them that the profits of the firm's business should be equally divided between the three partners, but that each of the two sons should be entitled to draw from the business for the support of himself and his family in weekly installments the sum of $2,500 *per annum*, and that all losses incurred in the business, which would reduce the sons shares of the profits below $2,500 *per annum* each, should be charged to and borne by their father. This arrangement the defendants in their answers say was consented to by him in order to compensate them for their services in connection with the business and to continue under family control the enterprise with which his name had for many years been identified.

The answer of Joseph J. Turner also avers that in 1885 his father agreed that he might draw out of the business such sums of money in addition to $2,500 *per annum* as he found necessary for the support of his family and that any excess thus drawn by him over his share of the profits should also be charged to and borne by the father.

Testimony was taken by the plaintiff in support of the allegations of the bill but no witnesses were called on behalf of the defendants.

B. F. Newcomer, the President; C. R. Barnett, the Vice-President, and J. W. Marshall, the Secretary of the plaintiff, all testified that at an interview, held after the death of Mr. Turner, Senior, with the defendant Louis I. Turner the latter stated to them that he was indebted to his father's estate on the partnership account something over $4,000, and that his brother Joseph J. Turner was indebted to it on the same account something over $20,000. He further stated to them that he had trial balances and balance sheets of the firm in his possession which would show how the partners stood, and

at their request he produced those for the years 1886 and 1887 and permitted them to make the copies of them which are filed with the bill as exhibits. The last of these balance sheets shows an indebtedness to the firm as of December 30th, 1887, from Joseph J. Turner of $23,906.26 and from Louis I. Turner of $4,901.33. It does not appear that Louis I. Turner when producing these trial balances and balance sheets said or suggested that either of them was in any respect inaccurate or improper but he by his conduct and declarations affirmed them and, according to Barnett's testimony he offered to settle his indebtedness as it appeared upon them.

Barnett and Marshall further testified that Louis I. Turner told them that the books of the firm which were at the old place of business on Pratt street then occupied by Joseph J. Turner and F. A. Luchesi would disclose the entire indebtedness, and that they thereupon went to the old office and asked for the books but failed to get them as after a diligent search of the building with the permission and assistance of Joseph J. Turner and Luchesi the books could not be found.

Two letters written on February 15th, 1888, by Louis I. Turner the one to his sister, Mrs. Helen Keiley; and the other to his sister, Mrs. Lillie Munson, were also put in evidence. The material portions of these letters are as follows:

"Baltimore, Md., February 15, 1888.

"My Dear Helen:—I suppose you see by today's 'Sun' and 'American,' the 'Sun' I know you take, the announcement of Pa's withdrawal from business, and the formation of a new firm by J. J. Turner, Jr., and Fred. A. Luchesi, under the old firm name as the successors, etc., of Pa * * * *. I have not, as you probably know, been at the store for a year, but continued all the time a member of the firm ever since I discovered that the book-keeper and Joe were desirous of getting together, with, of course, the intention of using Pa's capital, etc. * * * I deem it my duty to write to you, being my sister, and having both a legal and moral right to know of such matters, and inform you of exactly the state of affairs looked at from a financial standpoint, as you no doubt know the principal cause of all the trouble has been my protest against Joe's continued overdrawing at the store, my indebtedness to Pa, in consequence of losses, which we

all had to bear is on January 1, 1888, $4,901.33, which I hope some of these days to repay in full.   J. J. T., Jr., total indebtedness is to January 1, 1888, $23,906.26, together with $2,700, which he realized upon 25 shares of German-American Bank stock, about which you know I have no comments to make.   *   *   *   I am, yours as ever, L. I. Turner."

"Baltimore, Feb. 15th, '88.

"My Dear Lillie.—You will see by enclosed slips from the Balto. 'Sun' of today of Pa's withdrawal from business and the formation of a new firm as the successor of the old by J. J. T., Jr., and Fred. A. Lucchesi.   *   *   *   I deem it my duty to acquaint you of matters as you have both a moral and legal right to know.   *   *   *

"The financial facts as taken from our balance sheet of the business Jan. 1st, 1888, I give below.   I am indebted to Pa, in consequence of losses which were made in '86 and '87 of which of course I had to bear my proportion is $4,901.33 which I hope some day to repay.   J. J. T. Jr.'s indebtedness is $23,906.26 besides $2,700 which he received from the sale of 25 shares of German-American Bank stock about which you know.   His indebtedness to Pa from the former business with (Keily & Co.) is about $8,000.   I make no comments I simply state facts which you can take as you please.   I state them because I believe you should know them.   *   *   * Yours as ever, L. I Turner."

Marshall, the secretary of the plaintiff, also testified that he told the defendant Joseph J. Turner that he was shown to be indebted to his father by the balance sheets prepared by Luchesi whereupon Turner replied "that if they were in the hand-writing of Luchesi they must be correct because Luchesi always knew what he was doing."

The defendants were called by the plaintiff as witnesses and interrogated as to the fact of the partnership and the persons who composed it and the whereabouts of its books and papers and they both testified in substance that the books and papers had disappeared and could not be found.   Joseph J. Turner also testified that he had never seen a balance sheet of the business and could not say whether or not it had been profitable as he attended to the manufacturing branch of it.

A decree for an accounting was passed in the case on January 28th, 1902, and the plaintiff called F. A. Luchesi as a

witness before the auditor.    He identified the trial balances
and balance sheets as the original ones which he had prepared
while book-keeper of the firm and testified that the trial bal-
ances had been taken·by him on or about their several dates
from the books of the firm and that the balance sheets were
made out from the trial balances and that they correctly
showed the state of accounts between the partners as they
appeared upon the books of the firm.    He also testified that
Joseph J. Turner was charged on the ledger of the firm with
an indebtedness of $23,906.26 and Louis I. Turner was
charged thereon with an indebtedness of $4,901.33, being the
same amounts which appeared to be due to the firm by them
respectively on the balance sheet of December 31st, 1887.

Luchesi further testified that the books were kept upon the
theory that the losses were to be borne in equal proportions
by the three partners and that if an operative and binding
partnership agreement existed providing for a different distri-
bution of the losses the books and balance sheets would not
show the true state of the accounts.    He also said that Mr.
Turner senior told him that he never expected his sons to pay
him what they owed him and that in 1885 or 1886 he exhib-
ited to the witness an unexecuted paper purporting to be an
agreement between him and his two sons providing that the
sons should each receive $2,500 *per annum* from the business
without any liability on their part for its losses.    That after
the witness was shown this paper he asked Mr. Turner senior
in reference to the matter and how he should thereafter make
out the accounts and that Mr. Turner directed him to let the
books go on as they were and they (the partners) would ulti-
mately arrange matters between them, and that the witness
therefore continued to keep the books in the same manner
that they had been kept before and that he was never directed
to change the method of keeping them.    This witness in his
testimony at different times made allusion to what he desig-
nates as the agreement or arrangement between Mr. Turner
and his sons and said for that reason that the accounts of the
partners might be regarded simply as memoranda of what

they had drawn out; but he admitted when pressed in that
respect that he personally knew of no operative agreement
between the partners as to the terms of their copartnership.

The auditor returned three accounts designated A, B and
C.   Account A adopted the balance sheets as correct and
found the defendants to be indebted to the plaintiff in
the amounts of the debits appearing against them on the
last balance sheet with interest added thereto.   Account B is
stated upon the theory that the partnership existed during the
years 1885 and 1886 and that by the partnership agreement
the defendants were entitled to draw $2,500 *per annum* with
no liability for any losses which might interfere with their
right to draw that amount.   Account C is stated upon the
same theory as Account B, except that the partnership is
treated as having continued until the end of 1887.   The Cir-
cuit Court rejected Accounts A and B and ratified Account C
and the plaintiff appealed.

We do not agree with the conclusion reached by the learned
Judge below.   The evidence fails to convince us of the exist-
ence of any such agreement between the partners as that set
up in the answers of the defendants, securing to each of them
the right to draw out from the moneys of the firm, which had
been entirely contributed by the father, the sum of $2,500 *per
annum*, in any event, with protection against the losses of
the business.   Where there is no specific agreement between
partners as to their respective interests in the profits and losses
of the firm the law presumes them to be equal, unless from
the facts and circumstances of the case it is apparent to the
Court that some other division was intended by the members
of the firm.   *Fleischman* v. *Gottschalk*, 70 Md. 529.   It is
conceded that no articles of copartnership were ever executed
in the present case and the defendants assert and the entries
on the firm books as proven by Luchesi show that the profits
were equally divided between the three partners.   Under these
circumstances the presumption is strong that the losses also
were to be borne equally by the partners, and the evidence
relied on to establish a different rule of their distribution

should be clear and convincing.　To our minds the preponderance of the evidence appearing in the record is the other way.

The books of the firm which were always so kept as to charge the losses as well as to credit the profits in equal portions to the three partners were in charge of an experienced book-keeper.　When that book-keeper, having been shown the unsigned draft of an agreement of the character set up in the answers, inquired of Mr. Turner senior how the books should be kept in that respect he was directed to go on and keep the books as he had theretofore done.　He continued to so keep the books and make out the balance sheets in such manner as to charge each partner with the money drawn out by him and also one-third of the losses.　The record furnishes no evidence of protest or objection by either of the sons to the entries upon the books of these charges against them or to the theory upon which the books were kept.　They must therefore be regarded as having acquiesced in the entries and the theory of distribution of profits and losses therein involved. It is well settled that entries upon the books of a firm as to shares of profits or losses when acquiesced in are as conclusive of the rights of the partners as if they had been prescribed in a regular contract.　*Fleischman* v. *Gottschalk*, 70 Md. 533–4; *Wheatley & Dorsey* v. *Wheeler*, 34 Md. 65.

As to the defendant Louis Ignatius Turner the record shows not only an acquiescence in the correctness of the balance sheets charging him with an indebtedness of $4,901.33 to the firm as of December 30th, 1887, but also a deliberate affirmance of the accuracy of the balance sheets and an open acknowledgment of the indebtedness with which he was therein charged.

After producing these sheets out of his own possession and delivering them to the officers of the appellant as exhibiting the true state of accounts between the partners, and offering to settle his indebtedness on that basis and after writing the letters appearing in the record to his sisters, whose interests are represented by the plaintiff in this litigation, he cannot,

upon the evidence appearing in this case, be heard to say that the balance sheets were erroneous and that he did not owe the debt with which he is therein charged.

The record does not contain evidence of any distinct admission by the other defendant Joseph J. Turner of the validity of the charges against him appearing upon balance sheets or of the correctness of the theory upon which the books were kept from which the sheets were prepared. We would not regard the mere statement on his part, that if Luchesi prepared the sheets they must be correct as of itself amounting to an admission of a specific indebtedness appearing thereon, the sheets not being present at the time. We however regard him as concluded by his acquiescence in the state of the firm's books upon which he was regularly charged with his withdrawals of money and also with one-third of the losses, those two classes of items composing with interest thereon the gross charge of $23,906.26 with which he is debited upon the last balance sheet. It is true he says in his evidence that he never saw a balance sheet and that he had no occasion to look at the books, but he does not say or intimate that he was ever denied access to the books or in any manner prevented from examining them and informing himself as to their contents. Under those circumstances the failure, if such there were on his part, to inspect the books and to object to any charges therein against him, that were in his belief improper, amounted to such an acquiescence in the entries therein relating to himself or his relation to his partners as to bind him by them. Luchesi's testimony is positive that the entry of the debit against Joseph J. Turner of $23,906.26 did appear upon the books of the firm.

The trial balances and balance sheets taken in connection with Luchesi's testimony as to entries upon the books of the firm were admissible as secondary evidence to prove the contents of the books which were proven to have been lost and not found although a diligent search for them was made at the place where they were last seen. Nor was it necessary for the plaintiff to give notice to produce the books in order

to lay a foundation for the introduction of this testimony. Both defendants admitted in their answers that they had not the books in their possession and did not know where they were. Under such circumstances it has been repeatedly decided that the notice to produce will not be required. *Union Banking Company* v. *Gittings*, 45 Md. 194; 1 *Taylor Evi.* 449, sec. 425; *Rex* v. *Haworth*, 4 C. & P. 254; *Foster* v. *Pointer*, 9 C. & P. 718.

It may be conceded that if the books themselves as well as the balance sheets was before us the latter could not be relied upon to prove the contents of the former, which being present would afford the best evidence of their contents, but when the books have been lost or mislaid and cannot be found, the trial balances taken from the books by the book-keeper and the balance sheets made up by him therefrom, accompanied by his testimony that the charges appearing thereon against the several partners appeared also upon the books, are admissible as secondary evidence of the contents of the books and the theory and plan upon which they were kept. This proposition is applicable with especial force in this case against the defendant Joseph J. Turner, because the books of the firm are shown to have been left, upon its dissolution, in his possession and under his control and he has failed to respond to the demand for their production.

The defendants are the only living parties to the alleged agreement with their father exempting them from liability for the losses of the firm, if such an agreement were in fact ever made, and yet they contented themselves with alleging its existence in rather general terms in their unsworn answers, and neither one of them although they were put upon the stand by the opposite party attempted to support the allegations of his answer in that respect by his testimony. Such conduct has been repeatedly held by this Court to raise a strong presumption against the party who withholds the evidence which he has it in his power to produce and has even been held to amount to a confession of the untruth of the allegations which he thus fails to support. *Hiss* v. *Weik*, 78

Md. 452; *Zimmerman* v. *Bitner*, 79 Md. 128; *Berger* v. *Bul-lock*, 85 Md. 443; *Keller* v.*Gill*, 92 Md. 195.

The only testimony in the record tending to support the defendants' assertion, that they had an agreement with their father restricting their liability as partners, is that of Luchesi, who admits that his knowledge upon the subject was limited to what Mr. Turner senior told him.    His testimony carefully examined proves no more than that the elder Mr. Turner had in his mind an inchoate purpose to release his two sons from a certain portion of what he himself designated as "what they owed him" and that he went so far on one occasion as to have prepared an agreement which if it had been executed would have effected such release.    There is however no evidence that this agreement was ever signed by any of the parties named in it, and as Mr. Turner senior refused to permit the firm's method of book-keeping to be so changed as to conform to the terms of the proposed agreement it is evident that he must have abandoned any intention to relieve his sons from their partnership obligations to him.

It is significant in this connection that while he in his conversation with Luchesi asserted that he did not expect his sons to pay to him their indebtedness, he by his will, executed in October, 1886, and never afterwards changed, made the payment of that indebtedness a condition precedent to their participation in the distribution of his estate.

Upon the whole record we are of opinion that the appellant is entitled to a decree against the appellee, Joseph J. Turner, for $23,906.26, and against the appellee, Louis I. Turner, for $4,901.33, those being the sums with which they were charged on the firms books as of December 31st, 1887, there being neither allegation nor proof that the state of the accounts was changed by the remaining month during which the partnership may be regarded as having continued.

In view of the whole situation out of which the indebtedness of the appellees to their late father arose and of the lenient disposition manifested by him in respect to its enforcement against them in his lifetime we have not allowed interest there-

on since the date of the ascertainment and entry upon the books of the firm of the balances respectively due by them.

The appellees in their argument laid stress upon the apparent similarity between the present case and those of *The Safe Deposit Co.* v. *Baker*, 90 Md. 744, and *Falconer* v. *Kirby*, 90 Md. 594, and claimed that these cases afforded precedents for the maintenance of their contention in the present one. It is sufficient to say in that connection that each of those cases was decided upon a special set of facts and circumstances established by evidence which took them out of the operation of the rules of law applicable to ordinary copartnerships.

Decree appealed from reversed with costs and case remanded for decree in accordance with this opinion.

(Decided *per curiam* July 2nd, 1903. The foregoing opinion was filed October 9th, 1903.)

PAGE, J., dissented.