SUPERVISOR OF ASSESSMENTS OF BALTI-
MORE COUNTY *v.* BANKS ET UX.

[No. 110, September Term, 1968.]

*Decided March 10, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Anthony M. Carey, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*W. Giles Parker* for appellees.

SMITH, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County reducing an assessment made by the Supervisor of Assessments of Baltimore County and sustained by the Maryland Tax Court. We reverse the action of the Circuit Court.

Appellees (Banks) built a magnificent residence on a tract of 151.5 acres on the west side of Falls Road near Miller Road in Baltimore County. Mr. Banks testified in the Maryland Tax Court that the cost of construction of the property was approximately $240,000.00. He said, "We had fairly good buying power at the time, because we were buying tremendous quantities of materials, [for another project, some] of which would be used in this house." The Tax Court found an actual construction cost of the property of approximately $285,000.00 by adding to the admitted cost of $240,000.00, $20,000.00 for architectural, engineering and landscaping fees and $25,000.00 for superior purchasing power with regard to material.

A specialist in the assessment of new residential property in the office of the Supervisor of Assessments of Baltimore County placed a value on the subject property for assessment purposes of $274,000.00. He derived his evaluation from the use of Boeckh's Manual of Appraisals, a standard assessment guide utilized throughout the state.

He used a construction figure of $1.35 per cubic foot. To a cost estimate of $252,900.00 thus obtained he added $23,650.00 for air-conditioning, extra baths, etc., making a total of $276,-550.00. A deduction of 1% for "incurable physical deterioration" produced a figure of $273,785.00 which he rounded to $274,000.00.

For assessment purposes the specialist used 59.1% of the $1.35 per cubic foot figure or $.80 per cubic foot. By this method an assessment of $162,000.00 for the building was produced, a reduction likewise having been made in the estimate for air-conditioning, etc. The total assessment was:

| | |
|---|---:|
| Land (not in dispute) ................. | $ 24,875.00 |
| New luxury type one family residence .... | 162,000.00 |
| Other buildings (not in dispute) ........ | 16,950.00 |
| Total ..................... | $203,825.00 |

Banks appealed the assessment to the Maryland Tax Court. With reference to market data the assessor said in his appraisal filed as an exhibit in the Maryland Tax Court:

> "Properties of this type are generally designed by Architects for people in special financial circumstances and constructed by preferred Contractors under Architectural Supervision. These conditions prevailing, eliminate the possibility of a resale until such a time and age to the property that the facilities within the property are outdated and obsolete. Thus, market data to indicate the value of this property is not available."

When asked in the Maryland Tax Court to explain how he arrived at his opinion as to value he said:

> "[A]fter making a physical inspection and determining the cubic content, not having properties, samples

of properties which are identical to this or very comparable to this, in Boec[k]h's manual I turned to other luxury-type properties, even though they may not be considered to be comparable by the protestant to arrive at figures or rates being applied to properties that are alike in type inasmuch as they are luxury-type properties and of multiple services so to speak. Ones that have many, many bathrooms and things of this nature and this is where I received my figures."

At another point in response to a question as to why he did not rely upon the market data approach in valuing the property the assessor said:

"There isn't market data to use as comparisons in determining this value and if I may, the reason in my opinion why market data isn't available is because when an individual spends money in this relation $150,000 to build a home and each individual has their own idea and builds what they want as an individual and to relate that to the existing market value using Boec[k]h's Manual as a guide, on page 75 there is a reference to this * * *." (page 75 of Boeckh's Manual was there read to the tax court but is not reproduced in the record)

At another point the record is as follows:

"(Chief Judge Fenneman) Did you find any actual comparable properties to that property?

"(The Witness) There are none to my knowledge.

"(Chief Judge Fenneman) And you had no market value data to go upon, did you?

"(The Witness) No, sir.

"By Mr. Parker:

"Q. Nor had you had any real estate experience as a salesman with the market, have you? A. Not such as a salesman, I have observed many, many sales take place."

Banks contends that the fair market value of the subject property is much below $274,000.00. He placed it at not more

than $100,000.00. He presented two experts before the tax court, one of whom placed a fair market value of $125,000.00 and the other of whom placed a fair market value of $115,000.00 on the property.

One of these experts based his conclusions in part upon a search through the records of his firm with a finding that only one house had been sold within the preceding three years "for $100,000.00 or $125,000.00". He then said:

> "The only other thing I can add to this is I don't care how much money a man puts into a house over $100,000 or $125,000 you got a problem in selling it and I frankly haven't seen one."

Judge Logan of the Tax Court after observing that most people who are going to buy a $125,000.00 home aren't going to buy only five acres asked:

> "Isn't the house worth more being on 151 acres than it would on 5 acres in an area where there are large homes and its an estate-type area rather than a row-house situation?"

to which the witness replied:

> "You may be right. The only reason I can't give you a definite answer is because what you have involved here is that you have 151 acres and you take the price of that plus the $125,000 and then we are talking about $350,000 or $300,000 for a home and in order to establish fair-market value, again you are just completely limiting your market."

The other expert said:

> "It is my professional opinion and this has taken some time, because *the property is a very, very unique and unusual one. In fact, it is the most unusual property that I have ever had the experience of visiting and looking at.*
>
> "I have tried to analyze what would be its fair market value in that the construction of said property

is so odd that it took me some time. It is a property that has a main dwelling and side dwellings connected by an enclosed air-conditioned corridor.

"After looking at it several times I felt at first that I couldn't find anyone who would acquire this property, because it's so unusual and built by the Banks for their particular ideas. It is not a conventional house that the rooms are conventional or it has a center hall per se, which would compare to large manor houses of this price and after analyzing it I felt that Mr. Banks has way, way overbuilt his property.

"I came to the figure in my mind that I feel the house and five acres which you would need to sell such a project would be worth $115,000 and I put $1,000 on the five acres. That's $5,000.

"I felt that it would be impossible to sell this property for more than $100,000 to $110,000 and even then it would be a purchase to some type of institution. It would be for institutional use.

"As I testified before the lower court and my client was there, I felt that he was groping in the darkness when he built this house for anything else but his own use." (emphasis added)

The Maryland Tax Court made findings of fact and conclusions of law. In so doing it said:

"It is apparent in this case, because the building is comparatively new, that the $240,000 construction cost might be used as an indicia of value. However, while the taxpayer gave his construction cost as $240,000, it appeared that possibly another $20,000 should be added for architectural, landscaping and engineering fees, and also that he had been able to take advantage of his superior economic buying capacity to save another $24,-000 or $25,000, which would bring the cost into the neighborhood of $285,000. The Assessor used a conventional and standard method of assessing through the use of Boeckh's Manual, which he characterized as the reproduction cost approach to value, and came up

with a figure of $274,000. *The evidence as to salability of the property of this character is exceedingly difficult for anyone to ascertain.* This is a mansion type property, unique in design, having many facilities, set upon a large acreage of ground in a preferred location, all of which must be considered.

"*In the final analysis it seems that the Assessor used the only really feasible method for the purpose of establishing his assessment in this particular case, which was to cube the buildings and base his assessment on the reproduction cost so established; * * *.* It appears to the Court that the Assessor's rate of 80 cents per cubic foot was well under that applied to the other luxury dwellings in the area, and it might also be pointed out that even though the assessment of $162,000 on the particular building involved is 59.1% of its full cash value, when the other buildings and the land are taken into consideration the overall percentage is 54.1%, which negates the argument that there was an over assessment percentage wise or that any discrimination was evident.

"In the absence of any affirmative evidence to the contrary, it appears that the assessment in the instant case must be affirmed." (emphasis added)

It thereupon confirmed an assessment of $203,825.00.

The matter was appealed to the Circuit Court for Baltimore County. Judge MacDaniel in part said:

"The Court, after reviewing the Memorandum filed and all of the evidence in the case including the transcript of the record is of the opinion that William Geist in his evaluation failed to take into consideration an additional element in arriving at his conclusion. This additional element is the fact that the residence in question is of a unique character and nothing exactly comparable to it could really be relied upon. Although comparable sales were testified to, the Court feels that they were not actually comparable in the present case. The Court below must take into consid-

eration all elements in reaching its conclusion and the Court below did not take into consideration the uniqueness of this particular property in evaluating the property for assessment purposes.

"The Court feels that an additional allowance of $50,000.00 would be more realistic under the facts as stated and that the value of the property in question for assessment purposes should be set at $224,000.00."

He then proceeded to reduce the assessment to 59.1% of $224,000.00.

There are two statutes here involved. Code (1965 Repl. Vol.) Art. 81, § 229 (1) was amended by Chapter 261 of the Acts of 1966 eliminating the former provision for a de novo hearing on an appeal from the Maryland Tax Court so that the statute now reads in pertinent part:

"The circuit court of the county * * * *shall determine the case upon the record of the Maryland Tax Court* and may affirm, reverse, remand or modify the order appealed from; *provided, that, unless such order is erroneous as a matter of law or unsupported by substantial evidence appearing in the record, it shall be affirmed."* (emphasis added)

The second statute here involved is Code (1965 Repl. Vol.) Art. 81, § 14 (b) which reads in pertinent part:

"(1) All real property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality. *The term full cash value as used in this subsection shall mean current value less an allowance for inflation, if in fact inflation exists."* (emphasis added)

In *Schley v. Montgomery County,* 106 Md. 407, 67 A. 250 (1907), a case involving valuation of stock for tax purposes, our predecessors said:

"The value of an article is ordinarily what it will bring at a fair sale in the market, unless it be of so special a nature that no market for it exists and then

its intrinsic value must be ascertained by a consideration of its cost, nature, utility and other characteristics." *Id.* at 410.

In *Meade Heights v. Tax Comm. of Md.,* 202 Md. 20, 95 A. 2d 280 (1953) Judge (later Chief Judge) Henderson in approving the action of the assessor said for this Court:

> " 'The Maryland law requires that all property shall be assessed "at the full cash value thereof on the date of finality." Code 1939, art. 81, sec. 11 * * * Ordinarily the cash value of property is the market value.' *Rogan v. Commrs. of Calvert Co.,* 194 Md. 299, 311, 71 A. 2d 47, 52. *It was recognized in that case, however, that assessors are not required to be guided entirely by market prices, regardless of how 'thin' the 'spot market' may be, or how much it may be affected by temporary or abnormal conditions.* In the instant case, it was shown that there were no sales of comparable properties that could be used as a guide, and the assessors used a standard method of reproduction cost, set out in the Assessment Manual approved by the Tax Commission, based on 1944 costs of construction in an effort to eliminate any inflated costs." *Id.* at 30-31. (emphasis added)

In *Tax Comm. v. Brandt Cabinet Works,* 202 Md. 533, 97 A. 2d 290 (1953) this Court said:

> "Usually the cash value of property is the market value. As there had been no sales of property, comparable to that here in dispute within a reasonable period of time, it was practically impossible to arrive at the market value. Of course, current market prices in making assessments are not always a guide, for at times market conditions may be temporary and abnormal. It is not the function of the courts to formulate instructions for the Supervisor of Assessments. It is the duty of the Commission to formulate from time to time a uniform plan for the assessment of property, which shall be followed strictly by the County

Commissioners and by all County assessors. Here, as to the new commercial buildings in Hagerstown, the assessment was based upon the cost of recent construction. This current cost appears to be a practical guide in arriving at 'full cash value'." *Id.* at 543.

In *Bornstein v. State Tax Comm.,* 227 Md. 331, 176 A. 2d 859 (1962) Judge (later Chief Judge) Henderson said on behalf of this Court:

"The record, as amplified, makes it clear that the Tax Commission did not rely solely upon the capitalization of gross income, but also considered net income, and both original and reproduction cost. * * *

"The purpose is, of course, to ascertain the full cash value under Code (1961 Supp.) Art. 81, sec. 14. Ordinarily the cash value would be the current market value, or what a willing purchaser would pay to a willing seller in the open market. *Rogan v. Com'rs of Calvert County,* 194 Md. 299, 311. * * * *It is firmly established in this State that the relative weight to be accorded to any relevant factor in a particular case is for the assessing authorities and not for the courts."* (citing authorities) *Id.* at 337. (emphasis added)

The question of "substantial evidence" was fully discussed by Chief Judge Hammond in his opinion for this Court in *Insurance Commissioner v. National Bureau,* 248 Md. 292, 236 A. 2d 282 (1967). Further discussion followed in *Brotherhood v. B & O R.R.,* 248 Md. 580, 238 A. 2d 516 (1968). The test set forth by Chief Judge Hammond in *Insurance Commissioner, supra,* has been called "the common denominator that must apply to any valid test of judicial review". In *Insurance Commissioner* "the common denominator" was set forth as follows:

"Whichever of the recognized tests the court uses— substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record — its appraisal or evaluation must be of the agency's fact-finding results and not an independent

original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the *judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.* This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." *Id.* at 309-10. (emphasis added)

Applying that test we hold that in this case the decision of the tax court was not erroneous as a matter of law and it was supported by substantial evidence appearing in the record. That body of experts had before it the decisions of this Court indicating that although "full cash value" is to be equated with fair market value, in the absence of a market or in the case of a "thin" market factors other than market value must be taken into consideration in determining full cash value. There was evidence from Banks' own witnesses in addition to the evidence from the assessor as to the lack of market data. One witness called it "very, very unique and unusual", "the most unusual property" he "ever had the experience of visiting". The second witness after basing his conclusions on one sale of a house with five acres of land was obliged to agree with Judge Logan of the tax court that the house in this case might well be worth more on 151 acres of land than a similar home with only five acres of land. Banks' own evidence as to costs of construction was close to the assessor's estimate when allowance was made for "superior buying power". Accordingly, we conclude that "a reasoning mind reasonably could have reached the factual conclusion" the Maryland Tax Court reached.

> *Order reversed, costs to be paid by appellees, and order of Maryland Tax Court reinstated.*