# WARLICK *v.* SUPERVISOR OF ASSESSMENTS OF ANNE ARUNDEL COUNTY

[No. 3, September Term, 1974.]

*Decided October 8, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, ELDRIDGE and O'DONNELL, JJ.

*L. Vernon Miller, Jr.,* for appellant.

*K. Donald Proctor, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

In this appeal from an order of the Maryland Tax Court, Mr. Warlick seeks to challenge, as he did below, the practice followed by Anne Arundel County's Supervisor of Assessments in assessing land devoted to farm or agricultural use. He rests his case on two arguments: first, he maintains that it was error to assess as a "home site" the area where an owner's dwelling is located on a farm in the same fashion as if it had been subdivided out of the farm. Second, he contends that the tax court acted arbitrarily and capriciously when it found that the home site was a "waterview home site" comprising one acre, and when it ordered that the assessment be based on a per acre market value of $30,000.00.[1]

---

1. The assessment of land devoted to agricultural use and of the improvements on the home site were not challenged in this case.

Warlick is the owner of a tract of 40.07 acres in Anne Arundel County lying between Route 50 and Whitehall Creek. He testified that the property, which was given to him by his mother in 1966, had been owned by his family since 1890, and had been continuously farmed. Warlick built a house on the tract in 1970-71, and resides there. The house is surrounded by a lawn, which Warlick thought consisted of about one third of an acre. The remainder of the property, other than fallow fields, marshland and timbered areas, is farmed by a tenant.

For the tax year 1972-73, the 40.07-acre tract was assessed at $8,800.00. For the year 1973-74, an assessment of $31,800.00 was recommended, which was reduced by the Appeal Tax Court of Anne Arundel County to $24,960.00,[2] and further reduced by the order of the Maryland Tax Court to $19,710.00. George A. Erickson, Jr., one of the County's assessors, explained the reason for the increase. In 1973-74, the one-acre home site and the 39 acres of farmland were separately assessed: a market value of $6,600.00 was attributed to the 39-acre tract, and a market value of $35,000.00 to the one-acre home site. Reducing these figures by a 40% allowance for inflation produced the figure of $24,960.00 for total assessable value.

Maryland Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 19 (b) sets out the manner in which farm property shall be assessed:

> "(b) *Farm or agricultural use.* — (1) Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if subdivided, it being the intent of the General Assembly that the assessment of farmland shall be maintained at levels compatible with the continued use of such land for farming and shall not be adversely affected by neighboring land uses of a more intensive nature. The General Assembly hereby declares it to be in the general public interest that farming be fostered and

---

2. The County's Supervisor of Assessments had adopted this figure.

encouraged in order to maintain a readily available source of food and dairy products close to the metropolitan areas of the State, to encourage the preservation of open space as an amenity necessary to human welfare and happiness, and to prevent the forced conversion of such open space to more intensive uses as a result of economic pressures caused by the assessment of land at a rate or level incompatible with the practical use of such land for farming. The State Department of Assessments and Taxation shall establish criteria for the purpose of determining whether lands which appear to be actively devoted to farm or agricultural use are in fact bona fide farms and qualify for assessment under this subsection. Such criteria shall be promulgated in rules and regulations which shall include, but shall not be limited to, the following:

"(i) Zoning applicable to the land.

"(ii) Present and past use of the land including land under the soil bank provisions of the Agricultural Stabilization Act of the United States government.

"(iii) Productivity of the land including timberlands and lands used for reforestation."

Compare *Supervisor of Assessments for Montgomery County v. Alsop,* 232 Md. 188, 192 A. 2d 484 (1963) *with State Tax Comm'n v. Gales,* 222 Md. 543, [*State Tax Comm'n v. Wakefield,*] 161 A. 2d 676 (1960).

At the time of the reassessment, the Warlick property was zoned agricultural. Under Anne Arundel County Code (1967) § 13.337.3, a minimum lot size of one acre was required for each residence in an area so classified.

In essence, Mr. Erickson testified that home sites were uniformly made the subject of a separate assessment in Anne Arundel County when the remainder of the property received preferential tax treatment as land devoted to agricultural use. It is obvious that he fixed the size of the

home site at one acre because of the minimum lot size required in areas zoned agricultural. It will be recalled that "Zoning applicable to the land" is one of the criteria to be adopted by the State Department of Assessments and Taxation under Code Art. 81, § 19 (b) in determining whether land qualifies for the farm use assessment.

Erickson further testified that he attributed a market value of $40,000.00 an acre to one half of the home site, because an acre parcel could be so delineated to make it a waterfront lot, and a market value of $30,000.00 an acre to the remaining half acre, thus arriving at an average market value of $35,000.00. It was his opinion that a waterview lot had a market value 25% less than that of a waterfront lot.

Turning now to Mr. Warlick's argument, we perceive no impropriety or unfairness in the separate assessment of the home site. Had the curtilage surrounding the Warlick residence been more extensive and more pretentious, containing several acres of lawns and gardens, ornamental statuary and perhaps a pool, it would have been manifestly inappropriate to extend to it the preferential tax treatment which is accorded farm property. That Mr. Warlick chose to make other use of his home site compels no different result, because its market value remained unaffected.

We do not reach the question whether accessory or auxiliary structures on a farm, occupied by farm employees, need necessarily be assessed in a similar fashion.

Mr. Warlick finds solace in a proviso in Code Art. 81, § 19 (b) (2) (A) (iii), which denies preferential tax treatment to:

> "(iii) Lands which, after July 1, 1972, are subdivided into lots or parcels from and after the first day of the taxable year in which the subdivision occurs, as evidenced by a recorded plat or by a known unrecorded plat used for purposes of selling or conveying lots or parcels, even though the deed descriptions of the lots or parcels make no reference to any such plat; *provided that lands which are subdivided in order to convey a single lot or parcel to a member of the immediate family of*

*the owner for his residential purposes . . . shall
not thereby be excluded from the provisions of
paragraph (1) hereof."* (Emphasis supplied.)

There is a simple answer to this: the farmer who conveys a parcel to one of his children who in turn builds a house, does not, because of the statutory proviso, jeopardize his farm assessment, even though the child's home site may be separately assessed thereafter.

In short, as the supervisor correctly points out in his brief, the preferential treatment accorded by Code Art. 81, § 19 is essentially an exemption, and as such must be strictly construed, *Perdue Foods, Inc. v. State Department of Assessments and Taxation,* 264 Md. 672, 288 A. 2d 170 (1972).

Warlick's second argument is that the tax court acted arbitrarily and capriciously when, after finding that the home site was not a waterfront site but a waterview site, it concluded that the site consisted of one acre and that the assessment should be based on a market value of $30,000.00.

It would seem to be conceded that on the date of finality, the Warlick lot was zoned agricultural, and that the minimum lot size specified by the zoning ordinance was one acre. That the precise dimensions of the lot had been determined by no one is of little consequence. The house had to be located on one acre of land. Even though the boundaries of the lot were not firmly fixed, it is obvious that where a house is within 200 feet of the water's edge, almost every reasonable configuration will result in a waterfront or waterview lot.

Mr. Erickson's qualifications were conceded. It was his unchallenged testimony that a one-acre waterfront lot had a market value of $40,000.00 and a one-acre waterview lot a value of approximately 75% of that amount, which he fixed in this case at $30,000.00.

It must be remembered that our appellate function in this kind of case is a narrow one. As we said in *Fairchild Hiller Corp. v. Supervisor of Assessments for Washington County,* 267 Md. 519, 521-22, 298 A. 2d 148, 149 (1973):

"The common denominator for testing judicial review of the act of an administrative agency such as the Maryland Tax Court has been defined as 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment.' *Insurance Commissioner v. National Bureau,* 248 Md. 292, 309-310, 236 A. 2d 282 (1967), quoted in *Supervisor of Assess. v. Banks,* 252 Md. 600, 610, 250 A. 2d 860 (1969)."

Although the supervisor took no cross appeal, he would have us remand the case to the Maryland Tax Court for dismissal of the appeal under the rule of *Capron v. Mandel,* 250 Md. 255, 259, 241 A. 2d 892, 894 (1968), which held that a jurisdictional issue may always be raised, even in the absence of a cross appeal. *See also Kikas v. Baltimore County,* 200 Md. 360, 363, 89 A. 2d 625, 626 (1952).

The supervisor's contention is that the notice of the proposed 1973-74 assessment was dated 11 December 1972, that it ordinarily would have been mailed on that date, that the demand for a hearing was stamped as having been received on 3 January 1973, which was not within the 20-day period prescribed by Code Art. 81, § 255 (a). Mr. Warlick's testimony that he mailed the protest on 30 December 1972 was uncontroverted.

This issue was raised in the tax court for the first time. It was not raised by the supervisor when he considered the protest, nor was it raised at the hearing before the County's Appeal Tax Court. The question was the subject of extensive testimony in the tax court, but that court failed to address itself to the point, even after the supervisor moved for a clarification of the opinion.

An examination of the calendar discloses that 30 December was a Saturday; 31 December, Sunday; and 1 January, Monday and a holiday. If the statutory requirement requires a *filing* within 20 days, in the circumstances of this case, the last day for filing was 2 January, Code (1957, 1969 Repl. Vol.) Art. 94, § 2.

In our view, such a reading of the statute is neither justified, nor consonant with what we understand to be the accepted tenets of statutory construction. The controlling statute in effect in December, 1972 was Code (1957, 1969 Repl. Vol.) Art. 81, § 255:

"§ 255. Hearing before initial and final assessing authority of city or county.

"(a) *Before initial assessing authority.* — With respect to any property assessed locally, any taxpayer, or city, or the Attorney General or Department may demand a hearing before the supervisor of assessments or the director of the department of assessments of Baltimore City, as the case may be, or their respectively designated representatives, as to the assessment of any property or any unit of tax value, or as to the increase, reduction, or abatement of any such assessment, or as to the classification thereof, for the next ensuing year. *Except as provided in § 29(f) of this article, no demand for a hearing shall be granted under this subsection unless answer or protest to a notice as to assessments was made, in the counties with the supervisor of assess- ments, . . . within twenty days from the date of such notice, or unless application for re- valuation or reclassification as to an existing or proposed assessment was made in the counties with the supervisor of assessments before the date of finality for the taxable year in question . . . .*" (Emphasis supplied.)

The immediate progenitor of the § 255 as here applicable had been enacted by Chapter 355 of the Laws of 1959, effective 1 June 1959. It read:

"Any taxpayer, or city, or the Attorney General on behalf of the State, may demand a hearing before the County Commissioners or the appeal tax court of Baltimore City or the assessing authorities of any other city as to the assessment of any

property or any unit of tax value, or as to the increase or reduction or abatement of any such assessment, or as to the classification thereof, for the next ensuing year; and no formal proceedings shall be required. In case of any such hearing any party in interest may file data and information bearing thereon, without regard to the technical rules of evidence. Any such person or corporation so demanding a hearing may also in writing file information with the county commissioners or the appeal tax court of his address or the address of the agent or attorney to which any notices pertaining to said matter shall be sent, provided such agent or attorney representing such person or corporation has first filed with such county commissioners or the appeal tax court of Baltimore City or the assessing authorities of any other city his right or power of attorney to represent such person or corporation. If any such address shall be filed it shall be the duty of the county commissioners or the appeal tax court to cause a statement of the order or action or refusal to act of such county commissioners or appeal tax court to be posted in the United States mail, postage prepaid, to such address, and no action or refusal to act shall be operative as against the person giving such address until such statement shall be so mailed. Except as provided in Sub-Section (f) of Section 29 of this Article, no demand for a hearing shall be granted under this section unless *filed* in the counties before the date of finality for the taxable year in question or in Baltimore City before July first preceding the taxable year in question." (Emphasis supplied.)

On 1 June 1961, a new § 255 (a), substantially identical with the one with which we are here concerned, became effective. The title of Chapter 233 of the Laws of 1961, which enacted the new provision, clearly stated the purpose:

"AN ACT to repeal Section 255 of Article 81 of the

Annotated Code of Maryland (1960 Supplement), title 'Revenue and Taxes', subtitle 'Appeals', and to enact a new Section 255 in lieu thereof to stand in place of the section so repealed, *revising and amending the provisions concerning an appeal from an assessment with particular respect to the demand for a hearing, the making of the initial appeal and the dates and times of applying for a hearing* before the initial and final assessing authority, and relating generally to appeals from assessments in this State." (Emphasis supplied.)

It seems clear to us that for the concept of *filing* on which the 1959 version hinged was substituted in 1961, the concept of *making* a demand for a hearing, or, as the title puts it, *applying* for a hearing. As a consequence, under Mr. Warlick's unchallenged testimony, a hearing was demanded on 30 December, within the 20-day period. That the demand was not received until later is of no consequence.

We are unable to accept the supervisor's contention that Section 256 of Article 81, dealing generally with appeals to the Maryland Tax Court, mandates a different result. The portion of Section 256 on which he relies provides:

"No appeal on behalf of a taxpayer shall be allowed under this section from a failure or refusal to abate, reduce, or reclassify an existing assessment unless application in writing for such action shall have been *filed* by the appellant with the final assessing authority appealed from within the time limited for the *filing* of a demand for a hearing by § 255 of this article." (Emphasis supplied.)

Section 256 was last amended by Chapter 757, § 1 of the Laws of 1959. The substantial revision of Section 255 to which we have already alluded occurred in 1961. It seems to us that a familiar principle is applicable here: while two statutes *in pari materia* are to be given full effect whenever possible, if they are irreconcilable, the later statute governs to the extent of the conflict, *Department of Motor Vehicles*

*v. Greyhound Corp.,* 247 Md. 662, 666-67, 234 A. 2d 255, 257 (1967).

*Order of Maryland Tax Court affirmed, costs to be paid by appellant.*