RICHARD P. BROWN ET AL. *v.* SUPERVISOR OF
ASSESSMENTS FOR MONTGOMERY COUNTY,
MARYLAND

[No. 886, September Term, 1978.]

*Decided July 6, 1979.*

The cause was argued before MORTON, MOYLAN and LOWE,
JJ.

*R. Edwin Brown,* with whom were *Brown & Sturm* on the
brief, for appellants.

*Peter W. Taliaferro, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellants are owners of 32.34 acres of farmland in the Barnesville area of Montgomery County. They are appealing specifically the tax assessment for the year 1973 on a ½-acre segment of that larger tract improved by a tenant house. The house was assessed at $10,200 and the ½-acre curtilage surrounding it at $3,400. The Supervisor of Assessments for Montgomery County is the appellee.

The appellants entered a timely protest and appealed the assessment to the Maryland Tax Court. That court heard evidence and passed an order affirming the assessment. Contending that the decision of the Maryland Tax Court was arbitrary, capricious, confiscatory and otherwise illegal, the appellants appealed to the Circuit Court for Montgomery County. Following argument in that court, Judge David L. Cahoon filed a Memorandum and Order on July 26, 1978, affirming the decision of the Maryland Tax Court. Upon this present appeal, the appellants raise two contentions:

1) That it was error for the appellee to assess the farm curtilage, improved by a tenant dwelling house on an unsubdivided farm property, at 50% of its alleged market value; and

2) That it was error for the appellee to ignore the Appraiser's Manual for the State of Maryland and to use a non-uniform method of depreciating the house.

The appellants are trustees of the larger farm in question, having secured a tenant farmer to live in the house and to work the land following their father's death in 1961. The land, used exclusively for agricultural purposes (other than the residence now in question), is improved only by a bank barn and by the tenant dwelling house. The house is situated on a ½-acre curtilage and is surrounded by a mowed lawn and trees.

Testimony before the examiner of the Maryland Tax Court established that the dwelling had been constructed before the

turn of the century, at least by 1890. The house has no basement, central heating or air conditioning; it does have a tin roof, frame exterior walls, plaster interior walls, pine floors, a 35-year-old bathroom equipped with an old-style tub on legs, electric heat and two porches. Water is supplied from a dug well. In addition, testimony established that there had been no changes in the neighborhood or community to alter the essentially agricultural nature of the area.

The county tax assessor separately assessed the homesite, allocating ½ acre for its support. Generally, zoning requirements mandate a two-acre support for the construction of new residential dwellings, but since 90% of the homesites in the area were developed on half-acre sites previous to the promulgation of Rural Agricultural (RA) zoning requirements, the practice established for assessment purposes in the area is to set aside one-half acre sites for residential use.

In determining the status of particular land as either residential or *bona fide* agricultural property so as to merit preferential tax treatment, the Maryland Department of Assessments and Taxation, pursuant to *Md. Code Ann.,* Art. 81, § 19 (b), set forth certain relevant criteria in Regulation No. 9. These include, but are not limited to, applicable zoning ordinances; general character of the neighborhood; present and past use of the land; *business activity of the owner on and off the subject property; principal domicile of owner and family; whether the farming operation is conducted by the owner or another for the owner, and if the latter, the terms of the arrangement;* uses, other than the farming operation of the land; and the ratio of farm or agricultural use as against other uses of the subject property.

In light of these factors, the assessor determined that the ½ acre upon which the dwelling sits was being put to residential rather than agricultural use, thus precluding the application of the special agricultural land use assessment exemption provided by Art. 81, § 19 (b) of the Code. The ½-acre homesite, at residential value, was assessed at $3,400, based on values of three comparable, non-agricultural ½-acre homesites.

Then, consistent with established practice, the dwelling was assessed on a cost reproduction, less depreciation, approach. Cost reproduction assessment is based on the structure's dimensions and type, together with additional factors such as the existence of porches and heating systems, all integrated into the cost of the dwelling's reconstruction in Montgomery County for the tax year 1973. The value thus calculated was $32,674.

The dwelling's depreciation was calculated by an initial reduction in value of a basic rate of 35%, as set by the County Tax Commission Office, on observed depreciation of its condition. Testimony established that the structure's age (i.e., predating 1920) was the determinative factor in the assessor's use of this basic rate, as opposed to strict adherence to the practices set forth in the Appraisal Manual for Maryland Assessors, as mandated by *Md. Code Ann.,* Art. 81, § 19 (b), § 244. (Moreover, use of the manual for a dwelling of 70 years of age or more, of average construction type, such as the dwelling in question, would have established a rate of depreciation of about 52%.) In addition to the basic rate, the assessor deducted another 20% for "functional and economic obsolescence" for a total depreciation of 55%. These computations valued the house at $16,990. After further reduction of 40% for inflation, the dwelling's assessment was valued at $10,200. By adding the assessment of the bank barn, the total assessment of improvements on the land was $10,900.

The assessor was confronted with a situation wherein, on one hand, an agricultural community included homesites with "landscaped" lawns and trees, and, on the other hand, a piece of agricultural property included a homesite leased out to a tenant farmer who lived in the house and tilled the soil. The appellants sought to establish before the Tax Court that the property in question was strictly used for agricultural purposes, as was the land in the surrounding community. They further attempted to show that the dwelling supported by the ½-acre homesite, set aside for residential use by the appellee, existed solely for the purpose of the continued maintenance and operation of the adjacent farmland.

The appellants rely mainly on *Warlick v. Supervisor of Assessments of Anne Arundel County,* 272 Md. 540 (1974), in arguing that a homesite occupied by a tenant farmer hired to work the surrounding farmland should be considered agricultural property and thus deserves the exemption benefits granted farmland by the Legislature in *Md. Code Ann.,* Art. 81, § 19 (b). In *Warlick,* the Court of Appeals affirmed the residential rate assessment of a one-acre tract of land on which Warlick built a house on his farm. In doing so, the Court offered appellants the basis for their cause by stating, "We do not reach the question whether accessory or auxiliary structures on a farm, occupied by farm employees need necessarily be assessed in a similar fashion." 272 Md. at 544.

In making this statement, however, the Court of Appeals in no way decided the matter in favor of the appellants. In fact, the Court again announced its interpretation of § 19 (b) as it set it forth in *Perdue, Inc. v. State Department of Assessments and Taxation,* 264 Md. 228 (1972), by holding that "the preferential treatment accorded by Code Art. 81, § 19 is essentially an exemption, and as such must be strictly construed." 272 Md. at 545. *Perdue* itself held, "It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State." 264 Md. at 232-3.

In terms of our standard of review, it is accepted that the circuit court, and the appellate court, will extend significant deference to the determinations made by the assessing authorities. "It is firmly established in this State that the relative weight to be accorded to any relevant factor in a particular case is for the assessing authorities and not for the courts." *Fields v. Supervisor of Assessments for Montgomery County,* 255 Md. 1, 4 (1969), quoting *Bornstein v. State Tax Commission of Maryland,* 227 Md. 331 (1962). And in *Insurance Commissioner v. National Bureau,* 248 Md. 292 (1967), the Court discussed the process of reviewing decisions of administrative agencies:

"The required process is difficult to precisely

articulate but it is plain that it requires restraint and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under [any determination process to make a decision utilized by the agency] ... [U]nder any ... standards the *judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.* This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." (Emphasis in original) 248 Md. at 309-310.

See also *Supervisor of Assessments of Baltimore County v. Banks,* 252 Md. 600 (1969).

Furthermore, judicial review of decisions of the Maryland Tax Court is limited by *Md. Code Ann.,* Art. 81, § 229 (o), which provides that the county circuit court or Baltimore City Court "shall determine the matter upon the record made in the Maryland Tax Court. The [court] should affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record."

Thus, this Court rejects the appellants' contention of error in the assessor's finding that the homesite and dwelling are used for residential purposes, and not for strictly agricultural use. We find no error of law in this determination, and based on substantial supportive evidence in the record, and as a matter of the proper exercise of judicial authority in this area, must defer to the expertise of the administrative agent in the field, and affirm his findings.

Appellants next contend that the rate of depreciation applied to the cost of reproduction of the homesite dwelling was erroneous in that the tax assessor failed to adhere strictly to the depreciation principles set forth in the Appraisal Manual for Maryland Assessors (Ward, 1970). However, even had the assessor used the manual for his valuation, the depreciation rate for the dwelling in question would have been 52%, as opposed to the 55% figure, comprising depreciation and "functional and economic

obsolescence." The 70% figure quoted by the appellants as the "true" depreciation rate that they argue should be applied is not evident in view of the manual's graphs, and could possibly be arrived at only by adding the manual's depreciation rate (52%) to the obsolescence valuation of 20% added on by the assessor. To disregard the calculations of the tax assessor, as well as his factual conclusions relative to the use of the property, would not be in the best interests of the proper exercise of judicial authority in reviewing tax assessment cases, as repeatedly enunciated in *Banks, supra,* and *Warlick, supra.*

In addition, the manual itself provides for the elasticity in valuation which the appellants contest. The depreciation tables are explained in such a fashion as to warrant the conclusion that the manual's figures are more like guidelines than strictly-followed regulations. The manual refers to this section as a "depreciation guide" and states that "substantial accuracy in estimating depreciation, under the trained eye of the assessor, will result by using the general rules of allowing percentage depreciation in diminishing amounts" and, further, that "indicated depreciation rates on each of the graphs are broad guidelines only. Adjustments should be made as individual circumstances may warrant." (Manual, Volume I, Depreciation Section, pp. 5-6)

The appellants also argue that *Md. Code Ann.,* Art. 81, § 244, requires strict adherence to any regulation promulgated for assessment purposes. In *Macht v. Department of Assessments of Baltimore City,* 266 Md. 602 (1972), however, the Court held that "[i]t has long been established that assessors have reasonable latitude in selecting a method of valuation, so long as they arrive at the 'full cash value'." 266 Md. at 608.

In *Verkouteren v. Supervisor of Assessments for Montgomery County,* 38 Md. App. 216 (1977), this Court was asked to review the assessment of a house for which no comparable homes existed. In interpreting § 244, the Court held at p. 222:

"No constitutional violation occurs just because the

assessment method is not the same for all property in the state. It is firmly established that in valuing property assessors have reasonable latitude in selecting a method of valuation, so long as they assess the property at its full cash value. . . . Hence, in order for the method used to result in a non-uniform rate of tax the property must be assessed at some figure other than its full cash value. Determining whether the method of depreciation causes the appellant's property to be assessed at something other than full cash value is basically a factual question involving the expertise of the administrative agencies established under Art. 81."

The trained assessor, in valuing depreciation of a dwelling more than 70 years old, utilized a basic rate of 35% set by the county assessment office. This was within his legally permissible discretion, and in line with the doctrines set forth in *Banks, supra,* and *Warlick, supra.* For the above-stated reasons, the decision of the Circuit Court is affirmed.

*Judgment affirmed; costs to be paid by appellants.*