CONLEY, J. T. C.
At trial both parties indicated that they viewed this case as one of first impression involving the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq.[1] The specific, narrow issue was stated to be whether a log cabin on plaintiff’s land was a *567 “farmhouse” so that the one-half acre of land under it and used in conjunction with it should be assessed at its true value, as was done in establishing the 1980 assessment on plaintiff’s property. The case was tried as if this were the only issue. Neither party filed a brief in support of its contention.
As a result of a revaluation put into effect for the tax year 1980, the assessment on plaintiff’s property for 1980 was as follows: $3,100 for 48.64 acres of land assessed under the Farmland Assessment Act as woodland, $25,000 for the one-half acre beneath and around the cabin in question, and $6,200 for the cabin and a separate shed. The original assessment of $25,000 on the one-half acre portion of the property was reduced to $20,000 by the Hunterdon County Board of Taxation.
Plaintiff does not challenge the assessment of $6,200 on its improvements and the township does not dispute the correctness of its grant of farmland assessment to the 48.64-acre portion of the tract. The only dispute is the assessment on the one-half acre lot under and around the log cabin. Plaintiff contends that the land under the structure should have been assessed at a considerably lower figure as farmland, and defendant township argues that it properly assessed the land at its true value.
The statutory section invoked by the parties provides in relevant part as follows:
All structures, which are located on land in agricultural or horticultural use and the farmhouse and the land on which the farmhouse is located, together with the additional land used in connection therewith, shall be valued, assessed and taxed by the same standards, methods and procedures as other taxable structures and other land in the taxing district... . [N.J.S.A. 54:4-23.12]
Pursuant to his authority under the Farmland Assessment Act, the Director of the Division of Taxation promulgated an administrative regulation construing this section in the following manner:
Land on which a farmhouse is located, together with such land area as may be devoted to lawns, flower gardens, shrubs, swimming pools, tennis courts, and like purposes related to the use and enjoyment of the farmhouse, are not deemed to be in agricultural or horticultural use and therefore are valued, assessed and taxed by the same standards, methods and procedures as other taxable land in the taxing district. [N.J.A.C. 18:15-4.4]
*568 The matter involves a somewhat different issue than that framed by counsel. If the court were to find from the evidence that plaintiff’s log cabin was not a farmhouse, the conclusion would not necessarily follow that plaintiff should have received farmland assessment for the one-half acre used in connection with the cabin. For example, if the cabin were found to have been used as a machine shop, or as any other type of commercial operation, the land used in connection with it would certainly not have been entitled to the benefit of farmland assessment. Similarly, if the cabin were found to have been used as a hunting shack, the land under and immediately surrounding it would have had no apparent use in conjunction with an agricultural or horticultural effort. The issue, therefore, is not whether plaintiff’s log cabin was a farmhouse but whether the structure and its dependent land were actively devoted during the pretax years of 1978 and 1979 to agricultural or horticultural use within the intent of the Farmland Assessment Act. In other words, the question is whether the use of plaintiff’s log cabin was similar to the use of a barn, shed, silo, crib or greenhouse. See N.J.S.A. 54:4-23.11. If its use was not similar to these uses, the land under the cabin could not be deemed to have been in agricultural or horticultural use. N.J.A.C. 18:15-4.4.
At trial it was established that plaintiff corporation is owned entirely by an individual named John Johns. Johns testified that he acquired the property consisting of 49.14 acres in two separate acquisitions in 1954 and 1957. At the time he acquired the property it was vacant land. Plaintiff began to reforest the property in 1957 and he has received farmland assessment for the property based upon his forestry efforts. Johns started to construct his log cabin in about 1958, completing it in about 1962. During this time plaintiff lived in East Orange and worked on the structure on weekends and during his summer vacations. His original intention was to build a home to which he could retire but he subsequently abandoned this plan when he bought the home in Chester Township where he presently resides.
*569 The cabin is a one-story structure built on fieldstone piers. Its one room is about 16' X 18' in size. The floor, rafters and roof were constructed with commercial lumber and its four walls were made of logs cut on plaintiff’s property. The cabin has a door made of pine planks. There are a total of five casement windows in two of the walls. The roof and floor of the cabin are insulated. The overall appearance of the cabin is attractive, due in part to its shingled roof, red window trim and the horizontal white lines from concrete chinking between creosoted logs. During the relevant period the cabin was furnished with two single beds, one double bunk bed, a table, four chairs (including an old leather armchair) and a woodburning cook-stove. The cabin had no electricity, no heat (other than that provided by the woodstove), no water and no bathroom. Plaintiff’s water source was a spring on an adjacent property. The only other buildings on the property were an outhouse and a 22' X 30 X shed or lean-to with a dirt floor used to store machinery, old motors and miscellaneous pieces of equipment. These two structures and the cabin were located in a cleared area comprising about one-half acre, which is the area at issue in this case.
Plaintiff testified that approximately one-third of the cabin was used for the storage of tools, pesticides and miscellaneous kinds of equipment related to his tree farming. During Christmas seasons in recent years he used the cabin for making wreaths from evergreen cuttings. Although plaintiff stated that he had not stayed overnight at the cabin in the past seven years, except occasionally to rest during the day when he was working there, he acknowledged that an acquaintance of his had stayed at the cabin for a week or two in 1978 or 1979 and had used the shed while doing mechanical work on a motor vehicle. The township’s appraiser testified that on September 19, 1979, the day he visited the property in connection with the municipal revaluation he found two men asleep in the cabin. He noticed that there was bedding on the bunk beds and kitchen utensils on the stove. Seeing beer bottles on the table and no other evidence of food or luggage, he assumed the men were hunters. *570 He did not ask them whether they had the owner’s permission to use the cabin. The appraiser noticed no pesticides, chain saws or other equipment in the cabin such as was described by plaintiff in his testimony. It was the appraiser’s opinion that the cabin was livable under very rudimentary conditions, comparing it to hunting shacks and fishing shacks which are not uncommon in rural parts of New Jersey.
I conclude from the evidence that the cabin was used for a variety of purposes during the years 1978 and 1979. After abandoning his original intention to use the cabin as a dwelling, plaintiff used it primarily for shelter and rest while he was on the property on weekends and during vacations. The cabin was also used occasionally as an overnight accommodation unrelated to plaintiff’s tree-farming operation. Plaintiff stored some tools and materials in a section of the cabin but the cabin was never used primarily as a storage shed or as what could fairly be considered a farm building. It follows from these findings that neither plaintiff’s log cabin nor the one-half acre lot on which it was located was actively devoted to agricultural or horticultural use during 1978 and 1979. As this court has stated, the agricultural use of a property must predominate in order for it to qualify for the preferential tax treatment of the Farmland Assessment Act. Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273, 289 (Tax Ct. 1981).
The only reported opinion of a court which discussed an issue closely related to the present issue appears to be Brown v. Supervisor of Assessments, 43 Md.App. 153, 404 A.2d 1083 (Ct.Spec.App.1979). In Brown the court considered the assessment of a tenant house and its one-half acre curtilage located on a 32-acre farm. The structure in Brown had been constructed at least by 1890 and had no basement, central heating or air conditioning. It had frame exterior walls, plaster interior walls, pine floors and a tin roof. The building was serviced by electricity and had some electric heat. It had a 35-year-old bathroom and its water was pumped from a dug well. A tenant farmer lived in the house and worked the land. The tax *571 assessor had determined that the one-half acre curtilage had been put to residential rather than agricultural use, thus precluding application of the special agricultural land use exemption. The taxpayer attempted to prove that the tenant house and one-half acre homesite existed solely for the purpose of continued maintenance and operation of the adjacent farmland. The court found no error of law in the assessor’s determination and affirmed the assessment of the house and lot as being used for residential purposes rather than for strictly agricultural use.
The Brown opinion lends support to my conclusion that plaintiff’s log cabin and its one-half acre lot were not actively devoted to agricultural or horticultural use within the intendment of the Farmland Assessment Act. The Maryland farmland assessment statute was considered a model in some respects for the New Jersey statute. Jackson Tp. v. Paolin, 3 N.J.Tax 39, at 53 (Tax Ct.1981). In Brown the court considered the issue to be whether the tenant house and its curtilage were used for strictly agricultural purposes. It found that a residential use relating to an agricultural use was not sufficient to enable the taxpayer to receive the benefit of farmland assessment. In the present case there was even less of a showing that the use of plaintiff’s log cabin was supportive of plaintiff’s agricultural activities.
Since the one-half acre under and around plaintiff’s log cabin was distinguishable by its use from the remainder of the tract, and since there was no showing that the one-half acre was either functionally part of the qualifying tree farm or a marginal land area of that farm, it is appropriate to treat the one-half acre differently from the major portion of the property. See Wiesenfeld v. South Brunswick Tp., 166 N.J.Super. 90, 398 A.2d 1342 (App.Div.1979); Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976).
The Clerk of the Tax Court will enter judgment affirming the assessment as modified by the Hunterdon County Board of Taxation.

This is a small claims case that was tried without a pretrial conference. N.J.S.A. 2A:3A-7; R.8:6-2.