## RADIN, ET AL. *v.* SUPERVISOR OF ASSESSMENTS OF MONTGOMERY COUNTY

[No. 323, September Term, 1968.]

*Decided June 26, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Jerome E. Korpeck,* with whom were *Wheeler, Korpeck & Nadonley* on the brief, for appellants.

*Joseph R. Raymond, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Jon F. Oster* and *Anthony N. Carey, Assistant Attorneys General,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The appellants, development and construction entrepreneurs (the owners), built a complex of high-rise apartment houses in Montgomery County, the names of which all begin with Blair. Involved in this appeal is whether one of these, Blair Plaza, an eighteen-story —

actually a seventeen-story since there is no thirteenth floor—building was substantially completed on January 1, 1964, the date of finality.

Code (1965 Repl. Vol.), Art. 81, § 8, provides that all real property in this State (except as in §§ 9 and 10 provided) by whomsoever owned shall be subject to assessment and taxation for ordinary taxes in the county "and/or" city in which it is situated. Section 19 (a) provides that:

> "In valuing and assessing real estate, the land itself and the buildings or other improvements thereon shall be valued and assessed separately; and buildings or improvements not substantially completed on the date of finality, semi-annual date of finality or quarterly date of finality shall not be assessed at all."

Montgomery County Code (1965), Vol. 2, § 84-7 (e) (reflecting Montgomery County Council Resolution No. 5-624 (1963)), provides that the date of finality for tax purposes is established as January 1 and the half and quarterly dates of finality as July 1 and October 1, respectively. Any real property completed after September 30 in any year and through January 1 in the next year is made subject to the payment of property taxes for the six months beginning on that January 1 and ending on the next succeeding June 30 by using the assessed valuation at half the current annual tax rate. Section 84-7 (f) provides:

> "Improvements shall become assessable hereunder if they are substantially completed. In the case of buildings under construction, the term 'substantially completed' shall mean when the building is under roof, plastered (or ceiled) and trimmed."

On December 10, 1963, the supervisor of assessments of Montgomery County notified the owners that Blair Plaza had been tentatively assessed at a named figure for

the six months succeeding January 1, 1964, and that the proposed assessment would become final unless protested in writing within twenty days. The owner sent a timely letter of protest to the supervisor, who in turn sent the owners notice of a hearing on their protest to be held on February 11, 1964, at which they could offer testimony as to value. The owners chose not to appear at the hearing. The supervisor made the assessment final, as the statute permits under the circumstances, and notified the owners that if they desired to "appeal this amount further" they could do so under Art. 81, § 225 "of the Laws of Maryland [the Code]" to the Appeal Tax Court of Montgomery County within thirty days.

Realizing that the matter had taken an unhappy turn that seemed to lead to prospective financial detriment, the owners at this point retained counsel who did appeal to the Appeal Tax Court. That court after two hearings affirmed the assessment. The Maryland Tax Court dismissed an appeal to it on motion of the supervisor because the owners had not exhausted their administrative remedies (they did not appear at the hearing before the supervisor on February 11, 1964), as it interpreted Code (1965 Repl. Vol.), Art. 81, § 230, to require as a prerequisite to the right to go to the Maryland Tax Court.[1]

Judge Pugh in the Circuit Court reversed and remanded the case to the Maryland Tax Court for trial on the merits. That court, after weighing the evidence, affirmed the assessment saying as to the law that the intent of § 19 (a) of Art. 81 of the Code and § 84-7 (f) of the Montgomery County Code obviously was that:

> "something other than a final completion of the building was intended, otherwise the assessable date could have easily been equated with the time the certificate of final inspection and occu-

1. Section 230 of Art. 81 provides that "No appeal to the [Maryland Tax] Court shall be allowed until the party seeking to appeal has exhausted his remedies before the Department, the Appeal Tax Court, the county commissioners, the board of municipal and zoning appeals of Baltimore City, or other assessing or taxing authority, as the case may be."

pancy \* \* \* was issued. The words 'substantially completed,' even when considered from the standpoint of the acceptance of a building imply 'that there remains uncompleted work that would require use of labor and materials;' *Baltimore County Department v. Henry A. Knott*, 234 Md. 417, 425 (1964). The case of *Shaughnessy v. Linguistic Society*, 198 Md. 446, 451 (1951) points out that the expression 'substantial part' is not a term of 'mathematical precision.' "

The Maryland Tax Court took a twenty-twenty view of the law. *Skinner Dry Dock Co. v. Baltimore City*, 96 Md. 32, 41-42; *Hamburger & Sons v. Baltimore City*, 106 Md. 479. The statutes (§ 19 (a) of Art. 81 of the Code and § 84-7 (f) of the Montgomery County Code) seem to have adopted the language in the Court's opinions and holdings in those two cases which determined the proposition that a building under construction is substantially completed for purposes of assessment for taxes when it is under roof and its interior plastering and woodwork are substantially, although not entirely, completed.[2]

Code (1968 Cum. Supp.), Art. 81, § 229 (1) (Chapter 261 of the Laws of 1966), provides for appeal from the

---

2. In Hamburger the appellant's architect testified as to the interior condition of the property just prior to the date of finality. His testimony was based on a written report that he had prepared at that time. He found the following plastering was not then completed: the stair hallway from basement to the first floor; the elevator shaft for the entire height of the building; the well shaft for the entire half of the building; the ceilings in the basement; patching around electric fixtures on all floors, a bundle chute from the 8th floor to the 7th floor.

He further testified that the following woodwork was not completed: no floors had been smoothed or joints planed, scraped, or oiled; wood partitions in the basement were not completed; basement doors were not hung; trim in the basement and on all floors around the register faces, etc., were not finished; one-third of the flooring on the first story was not laid; entrance doors and trim were not up; the wood trim of the mezzanine including wood panels under the mezzanine floor enclosure were not up; the floor of the mezzanine was not laid; some of the trim on the 8th floor was not completed; and woodwork in the back part of the show windows on the first floor was not completed.

Maryland Tax Court to the Circuit Court of the County wherein the property assessed is situate and then directs that:

> "the circuit court * * * shall determine the case upon the record of the Maryland Tax Court and may affirm, reverse, remand or modify the order appealed from; provided that, unless such order is erroneous as a matter of law or unsupported by substantial evidence appearing in the record, it shall be affirmed."

The Tax Court's order was not erroneous as a matter of law so the case turns on whether Judge Pugh was correct in his finding that "a review of the testimony convinces this Court that 'such finding [by the Tax Court of substantial completion] is supported by the evidence.' "

We think Judge Pugh was right. The owners produced the then resident rental agent and two subcontractors whose testimony was that although a number of apartments on the lower floors—some 10% of the total number—were occupied before the date of finality, the building was not substantially completed and indeed was a construction mess, if not a shambles. The assistant assessor who recommended the assessment testified from notes he made on three visits he made to the building in July and October and on December 31, 1963, that his "spot-check" inspection of a number of apartments on each of the seventeen floors and his deductions from name plates on doors and in the lobby, and other significant indicia, convinced him the building was substantially complete on the date of his last visit. The Maryland Tax Court said:

> "The Court is called upon to assess the degree of weight to be given to the parole evidence. At least two of the Taxpayer's witnesses, the Rental Agent and the Construction Superintendent, were testifying from memory, to the best of their recollection, as to circumstances occurring five

years previously. The third witness of the Taxpayer, the Carpentry Subcontractor, stated that he had reviewed his records prior to trial but had no records with him at the trial. The Construction Superintendent testified, in response to questioning as to what records he kept as Construction Superintendent, that he made daily reports to the Taxpayer's construction company listing the trades people on the job and detailing what they were doing and where in the building the various trades were working. He did not have these records with him. An officer of the construction company was in Court but did not testify. These records apparently would have disclosed the precise progress of the building construction as of the date of finality, but were not offered in evidence by the taxpayer to show lack of substantial completion as of the date of finality.

\* \* \*

"It is most significant that the best evidence of the case was not produced by the Taxpayer, i.e., the construction records prepared by the Taxpayer's witness, the Construction Superintendent. This evidence was in possession of the organization controlled by the Taxpayer, and therefore available to him.

\* \* \*

"In this case it is evident that the taxpayer's failure to produce available evidence, i.e., the daily progress reports of the Construction Superintendent, raises a presumption against him and this is particularly true when an officer of the construction company was in Court, but not called as a witness; 10 M.L.E., Evidence § 29, at page 113. Cf. *Safe Deposit Co. v. Turner*, 98 Md. 22 (1903). See also an interesting summary as to this presumption in *Brooks v. Daley*, 242 Md. 185, 194, 195 (1966), where the Court said:

'We have held that where a party refuses to take the stand to testify as to facts peculiarly within his knowledge, the trial court or jury may infer that the testimony not produced would have been unfavorable. *Chalkley v. Chalkley*, 236 Md. 329, 203 A. 2d 877 (1964) ; *Dawson v. Waltemeyer*, 91 Md. 328, 46 Atl. 994 (1900). The unfavorable inference applies, however, only where it would be most natural under the circumstances for a party to speak, call witnesses, or present evidence.

'In *Turner's Executor v. Turner*, 98 Md. 22, 55 Atl. 1023 (1903), this Court held that where the defendants were the only living parties to an agreement, withholding evidence which it was in their power to produce resulted in the inference that the evidence, if produced, would have been unfavorable. It was held in *Keller v. Gill*, 92 Md. 190, 48 Atl. 69 (1900) that the defendants' silence and failure to deny "gross charges of fraud" was little more than evidence of their guilt. Likewise, in *Berger v. Bullock*, 85 Md. 441, 37 Atl. 368 (1897), our predecessors said that the failure to deny charges of fraud is tantamount to an admission of the truth of those charges.

'Professor Wigmore states the rule in regard to permissible inferences to be drawn from a party's failure to testify as follows:

"It would be generally agreed, to be sure, that the mere fact of the party's failure to testify is not of itself open to inference; it is his failure when he could be a useful and natural witness * * * that is significant." (2 *Wigmore on Evidence* (3rd ed.), § 289, page 173).

See also McCormick on Evidence, § 249, pages 533-534.'

\* \* \*

"We must therefore, conclude that the written reports of the Construction Superintendent would be adverse to the taxpayer's contention as to the lack of substantial completion of the apartment building.

"It is the Court's responsibility to give weight to the testimony of all the witnesses. We conclude that the testimony of the Assessor, taken from notes actually made by him at inspections in July, October and particularly December 31, 1963, describing the condition of the building at that time, is entitled to more weight than the testimony of the Rental Agent and the Construction Superintendent, both of whom endeavored to recall from memory, with no supporting records, events of five years past, and the testimony of the Carpentry Subcontractor, even though he stated he had studied the records before testifying, but did not produce them.

"Thus, in the final analysis the Court does not feel that the Petitioner has introduced sufficient affirmative evidence as required by Art. 81, § 229 (h) to show that there had not been a substantial completion in light of the wording of the statute, and the Assessor's testimony, based on three inspections, shows that he had seen an amply sufficient number of the completed apartments, the corridors and the other progress in the construction of the building to give him an adequate foundation for the making of the assessment [half-year levy], and, consequently it must be affirmed."

The record justifies the conclusion of the Maryland Tax Court and of Judge Pugh.

*Judgment affirmed, with costs.*