PEARSON, Chief Judge.
Dade County, its commissioners and tax assessor, and the State Comptroller appeal from a judgment which found that improvements to appellee’s real property were not “substantially completed” on January 1, 1967, and therefore “were not subject to taxation as of January 1, 1967, under the provisions of F.S. 193.11(4).” The tax assessor had determined the improvements were substantially completed on that date and therefore subject to taxation under the provisions of § 193.11(4),[1] Fla.Stat. The appellee had initiated the present cause to set aside that determination. We hold that the record contains sufficient competent evidence to support the finding of the trial judge and that no reversible error has been shown.
During the progress of the cause in the trial court, the taxing authorities took an interlocutory appeal to the Supreme Court of Florida from the trial court’s ruling that § 193.11(4) was constitutional. The Supreme Court held (a) that § 193.11(4) constituted “only a temporary postponement of valuation and assessment of incomplete improvements” and did not “grant an exemption from ad valorem taxation in violation of Article IX, Sec. 1, of the Florida Constitution”; (b) that § 193.11(4) did not “fails to define or prescribe standards for the administrative application of the terms ‘substantially completed,’ in violation of Article III, Sec. 1, Fla.Const.” and was not fatally ambiguous.[2]
The findings of fact included in the final judgment contain the following description of the property:
“The property involved is a highrise apartment consisting of some seventeen (17) stories, with four hundred forty-five (445) apartments, all having complete kitchen facilities and varying in their rooms from one (1) to three (3) bedrooms as well as a living room and, in some instances, a dining room; and, of course, all had bathrooms. As part of the same property, very extensive public spaces, including lobbies, dining room, kitchen serving the guest dining room, various meeting and social halls, a marina, a two-level parking garage, an outdoor dining area and a large cabana area consisting of a pool deck, swimming pool and sun shades. All of the property is taxed under the same ownership; and all of the property did, in fact, appear on the 1968 tax bill of the plaintiff; but, in 1967, the defendants excluded all of the area, save and excepting the portion of the structure devoted to apartments and the lobbies and social rooms, omitting all of the outside area including the outside dining area, the garage, cabanas, pool deck, sun shades and marina.”
In arriving at his conclusion that the improvements were not substantially completed and therefore not subject to taxation on January 1, 1967, the trial judge made the following findings:
“1. The plaintiff’s property is a large complex in one of the better sections of Miami Beach, being located on Collins Avenue. The property includes very extensive public spaces which include lobbies, • dining rooms, kitchens serving these dining rooms, social halls, meeting halls, a two-level parking garage, an out *755 door dining area and large cabana area consisting of a pool, pool deck and sun shades. From the testimony, it is clear that such public spaces are an essential part of a highrise apartment on Miami Beach and are one of the biggest selling points for any apartment in that area. One of the plaintiff’s witnesses testified that the plaintiff sells a ‘way of life’ more so than the apartments themselves because Miami Beach apartments of a similar standard are pretty much the same, and the public spaces referred to above are the big selling point in getting tenants to lease the apartments.
“2. A good many of these public spaces were not available on January 1, 1967; and, in many instances, they had barely been started.
“3. That the testimony of the Tax Assessor’s employees was that they only visited some two (2) apartments per floor out of a total of some four hundred forty-five (445) apartments in the building. They checked the electrical system, air conditioning and plumbing in the same manner by examining it only in the two (2) apartments per floor which they visited. This does not constitute a sufficient examination to arrive at any accurate and valid determination of the degree of completion.
“4. Plaintiff’s witness, JOSEPH M. CASSAVENT, the personal property evaluator for the Assessor’s Office, had made a record (plaintiff’s Exhibit 81) of his visit on January 6, 1967, as related to the personal property; and on Exhibit 81 he had written, ‘Everything owned by the corporation is not functional and, therefore, should not be assessed.’
“5. The premises subject to taxation, with the exception of the marina which the Court has not included in arriving at a determination of whether the taxable premises were substantially completed, were not substantially completed as of January 1, 1967.
“6. That temporary Certificates of Occupancy were issued for the premises at various times for various purposes including the permitting of furniture to be moved into the building; and as late as February 9, 1967, a Certificate of Occupancy (plaintiff’s Exhibit (89) showed it to be the fact that construction was still going on in the premises and that portions of the public area were barricaded. It was not until April 11, 1967, that the final Certificate of Occupancy was issued on the building.
“7. The defendant assessor erred in failing to consider the whole taxable property in arriving at a degree or percentage of completion in that he omitted certain portions of taxable property and arrived at a percentage of completion of a part instead of the whole as required by law.”
The appellants point to other evidence appearing in the record in support of their conclusion that the improvements were substantially completed. In September 1965 construction of the Seacoast project began. Thus construction had been underway for 15 to 16 months before the taxing date. On November 18, 1966, the City of Miami Beach issued a temporary certificate of occupancy on Seacoast Towers East, which certificate authorized the moving in of tenants’ furniture. This was one and one-half months before the taxation date. On December 1, 1966, the City issued a second certificate of occupancy for the use of the entry lobby, the fourth through tenth typical floors and the west portion of the basement garage. A third certificate of occupancy for the mezzanine and all typical floors was issued on December 12, although there is evidence that the issuance of this last certificate may have been an error on the part of the City’s building department.
Pursuant to these certificates 18 or 19 apartments were occupied prior to the taxing dates. The final certificate of occupancy was issued on April 11, 1967, three *756 months and 11 days after the taxing date. The entire construction project had a construction loan of $9,000,000.00. Of that amount approximately $8,180,000.00 was expended prior to the taxing date and approximately $820,000.00 was expended thereafter. The assistant tax assessor who inspected the property in December 1966 testified that in his opinion the apartment structure (without outside areas) was 95% complete.
The essential difficulty with this case lies in the statute which entirely removes from the tax rolls improvements to land when these improvements have tremendously enhanced the value of the land. Such a seeming inequitable result reinforces the conscientious tax assessor in his conclusion that the term “substantially completed” as used in the statute should be given a liberal construction. This position is implied throughout appellants’ argument, and while it has persuasive value it is of doubtful legal significance. Legislatures may do things the courts think odd, but if their acts are within constitutional limitations we may not change them. Our only proper examination on this appeal is whether the terms of the statute permitted taxation of these improvements on January 1, 1967.
The essential term is “substantially completed.” The opinion of the Florida Supreme Court on the interlocutory appeal directed the parties attention to Bowery v. Babbit, 99 Fla. 1151, 128 So. 801 (1930), and to an opinion, Fla.Atty.Gen.Rep. 301, Opinions 1961-62.[3]
In Bowery v. Babbit the Supreme Court reviewed a finding by a trial judge in a mechanic’s lien foreclosure suit: “ ‘That the building in question had been substantially completed at the time complainant’s lien accrued. * * * ’ ” The court observed :
“In the above-quoted paragraph of the decree, the court used the words ‘that the building in question had been substantially completed at the time complainant’s lien accrued.’ This language implies that something remained to be done which required the use of labor or material or both to complete the building." 128 So. at 804.
The attorney general’s opinion cited discusses the question with which we are directly concerned:
“What is the meaning of the phrase ‘upon which active construction of improvements is in progress and upon which such improvements are not substantially completed’, as used in § 193.-11(4) F.S.?”
The opinion reaches the conclusion that the term “substantially completed” is not subject to a positive and definite definition and announces that:
“Generally, a building ready for occupancy, except for certain finishing touches necessary for final completion would be deemed substantially complete. The nature of the occupancy should be taken into consideration, under some circumstances complete completion may not be required for occupancy, while in other cases complete completion may be necessary. Where a building, or a large part of it has been occupied, although additional labor and materials may be necessary for final completion, it may be presumed to be substantially completed.”
It may be presumed that the opinion of the attorney general has been the basis for administrative action since 1961.
We are mindful of the fact that as pointed out in Homer v. Dadeland Shopping Center, Inc., Fla. 1969, 229 So.2d 834, 837, a “tax assessment is presumed to be correct and, in order to sustain his burden of proof in challenging a tax assessment, the taxpayer must present proof which excludes every reasonable hypothesis of a legal assessment.” The trial judge found *757 that the taxpayer did sustain the burden of proving that the tax assessor, in concluding that the improvements were substantially completed, incorrectly applied the law. The question then is whether this record supports that conclusion of the trial judge.
It is argued by the appellants that the trial judge took too large a unit when he considered all of the service areas except the marina as a part of the single improvement. It will be recalled that the tax assessor excluded all the area except the portion of the structure devoted to apartment, lobbies, and social rooms. The trial judge placed his conclusion upon a finding that the improvement was no ordinary apartment house but a group of structures which included the service areas as an essential part of the improvement. This finding is before us with a presumption of its correctness and the record contains evidence to support it. We think that the evidence is legally sufficient.
 By far the most serious objection to the trial court’s determination is the fact that some of the apartments were occupied. The attorney general’s opinion, above quoted, dealt with this problem. It is clear that occupancy is the single most telling indication of completion. The record shows that 18 or 19 of the apartments were occupied on January 1, 1967, and that prior to that date temporary certificates of occupancy had been issued by the City of Miami Beach for the fourth through the tenth floors, the entry lobby, and the west portion of the basement garage. The trial judge found that these temporary certificates were for the purpose of allowing tenants to move in their furniture. He considered the final certificate of occupancy issued on April 11, 1967, as the date of occupancy. We think the finding has evi-dentiary support in the fact that the occupancy was in such a small number of the 445 apartments and was for a few hardship cases.
The appellant has presented a point directed to the admission of certain photographs into evidence. In view of the basic findings of the trial court we do not find prejudicial error has been shown on this point.
Another point argues that the trial judge erroneously considered a notation upon the record of the. personal property evaluator that “Everything owned by the corporation is not functional and, therefore, should not be assessed.” (See paragraph 4 of findings quoted above.) The notation had evidentiary value upon the issue of occupancy and was properly considered. No error has been shown.
Affirmed.

. “All taxable lands upon which active construction of improvements is in progress and upon which such improvements are not substantially completed on January 1, of any year shall be assessed for such year, as unimproved lands. Provided, however, the provisions hereof shall not apply in cases of alteration or improvements of existing structures.”

. Culbertson v. Seacoast Towers East, Inc., Fla. 1968, 212 So.2d 646, 647.

. Culbertson v. Seacoast Towers East, Inc., Fla.1969, 212 So.2d 646, 647.