284 So.2d 416 (1973)
William MARKHAM, As Tax Assessor of Broward County, Florida, State of Florida, Department of Revenue, and W.H. Meeks, Jr., As Tax Collector of Broward County, Appellants,
v.
Cecil D. KAUFFMAN and Isabelle G. Kauffman, His Wife, et al., Appellees.
No. 72-622.
District Court of Appeal of Florida, Fourth District.
October 19, 1973.
Rehearing Denied November 16, 1973.
*417 Gaylord A. Wood, Jr., Fort Lauderdale, for appellants-Markham and State of Fla., Dept. of Revenue.
Hugh S. Glickstein of Law Offices of Judson A. Samuels and Hugh S. Glickstein, Hollywood, for appellees.
WALDEN, Judge.
This is a tax assessment case. It turns upon the application of the term, "substantially completed," as defined and intended under Section 192.042(1), 1970 Supp. to F.S. 1969, F.S.A.:
"192.042 Date of assessments.  All property shall be assessed according to its just value as follows:
"(1) REAL PROPERTY.  On January 1, of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. `Substantially completed' shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed."
The subject is a seventeen story multimillion dollar apartment building.
The protagonists are the tax assessor (and other taxing authorities) versus the building owners.
The issue is whether the building was substantially complete on January 1, 1971. If it was, the building and improvements will be assessed and included on the tax roll. Otherwise, the assessment will be made on the basis of unimproved lands (minus the building and improvements). The dollar consequence is, of course, significant.
Now to the present stance. The tax assessor deemed the building substantially complete. The owners complained to the trial court which adjudged the building to be not substantially complete. The assessor appeals. We reverse because we believe the tax assessor was legally and factually correct in the first instance and that the trial court committed reversible error when it disagreed.
The owners began construction of the 4.6 million dollar structure in 1969. They requested a final certificate of occupancy on December 15, 1970. All inspections precedent to the issuance of the Certificate *418 of Occupancy by the city were completed on December 31, 1970. No corrective work was required and a final certificate of occupancy was granted on January 7, 1971. On January 4, 1971, the general contractor, architect and lender agreed that only approximately $15,000 worth of work remained to be done, less than one-third of one percent of the total construction cost. Conversely, using a cost, or money, measurement the building was 99 2/3% complete.
Initially, we observe as a basic and controlling guideline that the tax assessor's determinations are presumptively valid. District School Board of Lee County v. Askew, Fla. 1973, 278 So.2d 272; Powell v. Kelly, Fla. 1969, 223 So.2d 305; Folsom v. Bank of Greenwood, Fla. 1929, 97 Fla. 426, 120 So. 317. Their determinations must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment. District School Board of Lee County v. Askew, supra.
The owners, upon their application, were issued, as stated, a certificate of occupancy on January 7, 1971. There is no dispute but that no work of any kind was done upon the structure between the critical date of January 1 and the actual date of issuance of January 7. Thus, for our purposes, we may consider that the certificate was in fact issuable on January 1, 1971. The owners do not challenge the correctness of the issuance of the certificate of occupancy, nor has there been any showing or suggestion that it was issued by mistake or through fraud.
The trial judge found that improvements were not substantially completed on January 1 and the building could not be used for its intended purpose because:
"E. On January 1, 1971, construction was of such a nature so as to render it impractical for anyone to occupy an apartment in the building simultaneous with the extensive grinding of floors and other concrete work, drywall replacement and repair, and other construction that was in progress. There was considerable dirt and debris from the work being done. Important mechanical equipment was not scheduled for testing; and when tested on February 1, 1971, proved to be substantially deficient. Extensive leakage existed in the building. The Certificate of Occupancy had not been issued as of January 1, 1971. The elevators had not been accepted. These and other factors existed so as to render it unreasonable to occupy the premises at the time that the work which the building required to be finished was being performed."
Looking beyond the adjectives to the mentioned items of incompleteness relied upon by the trial court, we see that the "extensive grinding of floors and other concrete work" referred to filling in and feathering some low areas and grinding off high areas on the floors in approximately two-thirds of the apartments. The grinding took only three to four hours per apartment to accomplish and the grinding in one apartment would not affect occupancy of another apartment. About two-thirds of the balconies required grinding due to spillage of a bonding agent by the plasterers. The drywall work referred to in the trial court order consisted of straightening and aligning the walls; the record does not reveal the amount. Concerning the finding that there was considerable dirt and debris, the record shows the lobbies, etc., were clear. Of course the apartments would require cleaning after the grinding to remove the resultant dust; but cleaning would have been necessary anyway before the apartments were occupied as they were to be sold unpainted and without carpeting.
The trial court determined that important mechanical equipment was not scheduled for testing until February 1st. The air conditioning was tested on February 1; the only problem was that it made a droning sound. The City Inspector had made *419 his final inspection on November 19th, 1970, and approved the heating, ventilation and air conditioning system. The extensive leakage mentioned refers to the fact that after a heavy rainfall water collected in the garage and basement areas. The three elevators, two passenger and one freight, were complete, except for the flooring in the freight elevator, and were operable on January 1. They were accepted on January 15. The parking garage was substantially completed except for some caulking, hanging up the fire extinguishers and installation of a section of railing.
Occupancy is the single most telling indication of substantial completion. Culbertson v. Seacoast Towers, Fla.App. 1970, 232 So.2d 753. Here, even though no tenants occupied the building until June, although same had long since  by many months  been occupiable by anybody's standards and criteria, the building was legally "occupiable" as soon as the certificate of occupancy was issued. It is not reflected that the building was unoccupied because of the reasons cited by the trial court, but due to lack of sales and economics.
In order to satisfy the "substantially completed" requirement of Section 192.042(1), supra, it is not necessary that a building be 100% finished. As was observed in Sherwood Park, Ltd., Inc. v. Meeks, Fla.App. 1970, 234 So.2d 702, at 703:
"A very good determination of substantially completed is to be found in State ex rel. Stites v. Goodman, Mo. 1961, 351 S.W.2d 763, 766. It was well said there that a building is `substantially complete' when it has reached the stage where it can be put to the use for which it was intended, even though some minor items might be required to be added. We construe that it was the intent of the legislature not to tax the property other than as unimproved unless it was complete to the point where it could be used for the purposes intended."
As we view the completeness proposition and the cases that have construed the problem, we confess that the determination is often a difficult one. However, the approach must be on a case by case basis, keeping in mind the intendment of the statute and the concept of fairness, both to the owner and to the public. We feel that pronouncements in this area should be carefully evaluated in combination with all of the factors bearing upon the issue and that care should be taken not to give literal or absolute application to one criteria to the possible exclusion of others so as to reach an unrealistic result. For instance, in a given apartment or sector there may be factors that would militate against immediate occupancy  but we do not feel that situation should absolutely or necessarily lead, regardless of other components, to a finding that the whole construction was not substantially complete. To illustrate our thinkings with some admittedly far-fetched examples: suppose on the critical date all construction was actually finished, but the clean-up crew had not yet scraped the paint, putty and dirt off of the fixtures and interior surfaces? For another instance, suppose the building is totally finished and in turnkey shape except for the switch panel on the airconditioning unit? In neither instance would a tenant be likely to move in and yet we dare to say that no one would seriously argue that the buildings were not then substantially complete. If it were otherwise, an owner could stage the construction so that a minor construction item having an important comfort factor would be missing on January 1st, and then just walk in and supply the missing component on January 2nd, thereby escaping a year's taxation.
From the totality of the evidence and circumstances, and in light of the presumptions and criteria which attend the tax assessor's decisions, it is our holding that the improvement here was substantially *420 complete as a matter of law on January 1, 1971, and therefore was correctly assessed and placed on the tax rolls by the tax assessor. We feel that an analysis of the mentioned conditions, singly and in combination, reveal that, while they may have been aggravating and a source of some discomfort and displeasure to a prospective occupier, they fall far short in balance and upon a broad view of affording that degree of incompleteness as would warrant a finding that the building was not "substantially completed" as statutorily intended.
Reversed and remanded for proceedings consistent herewith.
Reversed and remanded.
OWEN, C.J., and CROSS, J., concur.