376 So.2d 450 (1979)
JOHN HENRY JONES, INC., Appellant,
v.
Wade H. LANIER, Jr., As Osceola County Property Appraiser, and the Osceola County Board of Tax Adjustment, Appellees.
No. 78-1323/NT4-42.
District Court of Appeal of Florida, Fifth District.
October 31, 1979.
*451 Michael E. Egan of William J. Roberts, P.A., Tallahassee, for appellant.
Stephen W. Metz, Tallahassee, for amicus-curiae Fla. Home Builders Assn.
R. Stephen Miles, Jr., of Miles & Cumbie and Murray W. Overstreet, Jr., of Overstreet & Ritch, Kissimmee, for appellees.
LETTS, GAVIN K., Associate Judge.
In this case, the tax assessor found that six single family residences under construction were "substantially complete" as of January 1st and therefore subject to the taxation of the improvements thereon. We reverse.
Appellant building contractor commenced to construct six single family residences in early October 1974. The anticipated completion date was three months from commencement. Construction proceeded without interruption except that the builder deliberately ceased and failed to finish the units by the end of the year. As of January 1st, no toilets or sinks had been installed, the work on the storage and cabinet space was not complete, the homes had not been painted, the plumbing was as yet unfinished and the electrical wiring had not been "trimmed out." There is no question but that the houses in question were all ineligible for certificates of occupancy on the January 1, 1975 date.
The builder's testimony, which was uncontradicted, was to the effect that the houses were left in an incomplete state to (1) curb the high incidence of vandalism, (2) be eligible to continue builder's insurance coverage on the residences and (3) allow future purchasers to have input into the choice of finishing touches. Notwithstanding the trial judge stated:
"... the court finds that the residences located on the lots here involved were substantially complete within the intent and meaning of § 192.042, Florida Statutes, on ... January 1st, 1975 ... and that plaintiff has failed to carry the burden of presenting proof which excludes every reasonable hypothesis of the legality of the assessments made by the property appraiser..."
We do not agree. Section 192.042(1), Florida Statutes (1975) reads in part:
"All property shall be assessed according to its just value as follows:
1. Real Property.  On January 1 of each year. Improvements or portions not substantially completed on January 1 *452 shall have no value placed thereon. `Substantially completed' shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed." (emphasis supplied)
It is true that the trier of the fact is not required to believe the appellant's testimony as to why the houses were not complete on that date, but it seems inescapable that he must accept the fact that the units could not be used for the purpose for which they were constructed without sinks, toilets, electricity or a certificate of occupancy. This being so we cannot agree that the appellant failed to carry the burden of proof excluding every reasonable hypothesis of the legality of the assessments.
Several cases have been cited for the proposition that buildings can be "substantially complete," even though they are not 100% complete. However all of the cases cited involved high rise, condominium buildings where many if not all, of the individual apartments were complete. See Forte Towers East, Inc. v. Blake, 275 So.2d 39 (Fla.3d DCA 1973); Manufacturers National Corporation v. Blake, 287 So.2d 129 (Fla.3d DCA 1973) and Markham v. Kauffman, 284 So.2d 416 (Fla.4th DCA 1973). All these cases are therefore distinguishable from the one now before us because the six dwelling units here are each self-contained units, no way dependent on other units. Each one standing by itself either is or is not "substantially complete." Further in the context of multi-family dwellings we again refer to our citation of Section 192.042(1) in which the language speaks of "... some self-sufficient unit within it... ." Accordingly the statutory language encompasses multiple dwellings within which there are completed units but also incomplete units.
Addressing ourselves to the Markham case, supra, in particular, the facts there involved a seventeen story multi-million dollar apartment building, 99 2/3% complete and on which the builders had actually requested a certificate of occupancy by December 15th. Pursuant thereto, the court adopted as a test:
"A very good determination of substantially completed is to be found in State ex rel. Stites v. Goodman, Mo. 1961, 351 S.W.2d 763, 766. It was well said there that a building is `substantially complete' when it has reached the stage where it can be put to the use for which it was intended, even though some minor items might be required to be added. We construe that it was the intent of the legislature not to tax the property other than as unimproved unless it was complete to the point where it could be used for the purposes intended."
As to these six houses, it was not simply a matter of hooking up, turning on and complying with the necessity of a procedural certificate, there remained several "substantial" items to be attended to and none of these units could be used for their intended purpose. Therefore the requirements of the Markham test were not met.
Running throughout the briefs and the record of this cause is the persistent thought that it was the conscious act of the builder to withhold completion of these houses, expressly for the purpose of avoiding the assessment, although there is no concrete evidence to support such a thought. To us it makes no difference and we would suppose that the result would be the same even if the builder had deliberately failed to substantially complete the houses for the express purpose of avoiding the tax. The present statute does not contain any language which could possibly be construed to include housing units which could have been completed as well as those that are completed.
We do not perceive that this result will be used as a springboard for builders to practice wholesale tax fraud at the expense of county rolls. Builders are in the business of selling houses and apartments and must close their deals to get their money out. We do not ascribe any special moral virtue to builders, but by no stretch of the imagination do they deliberately want houses to continue unsold indefinitely in order to avoid taxes. The houses in the case at bar *453 were not only not sold by January 1, 1975, they were never sold at all during the following year, nor were they completed. This being so, they can not be taxed as substantially complete.
REVERSED AND REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT IN ACCORDANCE HEREWITH.
BERANEK, JOHN R., Associate Judge, concurs.
DAUKSCH, J., dissents without opinion.