509 A.2d 1207

## THAMES POINT ASSOCIATES

v.

## SUPERVISOR OF ASSESSMENTS of BALTIMORE CITY

### No. 1270, Sept. Term, 1985.

Court of Special Appeals of Maryland.

June 6, 1986.

Certiorari Denied Sept. 30, 1986.

2

Eugene P. Smith (Bruce L. Corriveau and Weinberg and Green, on brief), Baltimore, for appellant.

David M. Lyon, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., William K. Hammond, and Kaye Brooks Bushel, Asst. Attys. Gen., on brief), Baltimore, for appellee.

Argued before WEANT, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Thames Point Associates, appellant, pursuant to a condominium regime dated June 30, 1981, rebuilt the old National Can Company warehouse and factory into a 33 unit building. Thirty-two of the units were residential and the last, located on the first floor, was commercial. The residential units were intended to be, and, therefore, were marketed as, condominiums for sale. Such was the intention and marketing strategy pursued by appellant on January 1, 1982, the date of finality,[1] when the improvements were assessed for tax purposes.

As of January 1, 1982, all of the old pipes had been removed from the building, the exterior walls had been sandblasted, the old flooring replaced and new flooring added, partition walls had been erected between the units, the electrical and plumbing lines had been run into each unit, the drywall had been erected, the doors had been hung, and the wood trim was "for the most part" in place. Remaining to be done as of that date were: connection of the plumbing fixtures in the individual units; painting of the drywalls; tiling and carpeting of the flooring in each unit; connection of the individual air conditioning and heat-

---

1. The law applicable at that time, Md.Code Ann. art. 81 § 2(20), defined the "date of finality" as "the date as of which assessments become final for the taxable year next following, subject only to correction as herein authorized." The "semi-annual date of finality" was defined as "the date as of which assessments shall be made for all real property becoming assessable up to that time and after the next previous date of finality." Section 29A(a) further defined the finality date as January 1 and the semi-annual finality date as July 1. These provisions are presently codified in Md. Tax-Property Code Ann. §§ 1–101(i) and 10–103(a), respectively.

ing units; installation in each unit of electrical meters, light fixtures, appliances, hot water heaters, and hardware. Furthermore, at that time, appellant was engaged in an advertising campaign to sell the individual condominium units. In fact, beginning in 1981, and continuing through the first part of 1982, appellant expended some $100,000 for that purpose.

The Supervisor of Assessments of Baltimore City, appellee, determined that as of January 1, 1982, the Thames Point condominiums were substantially complete and assessed the property for taxation purposes for an initial one-half year, January 1, 1982 through June 30, 1982, and for a complete year, July 1, 1982 through June 30, 1983. To reach its determination, appellee relied upon the following factors: (1) the roof was completed; (2) the drywall was installed; (3) the woodwork was substantially completed; and (4) much of the remaining work to be done consisted of customized items to be completed at the option of the purchaser. Appellee also relied upon information received that the developer's intention was to bring the units to 90% completion by January 1, 1982, leaving unfinished such custom features as would be desirable to be done at the option of the purchaser.

As of the date of finality, despite appellant's advertising campaign, no unit had been sold as a condominium. Nevertheless, appellee, relying upon the facts that the property was already subject to a condominium regime, the individual units were constructed so as to provide separate systems for each unit, any buyer of the entire development would view it as a condominium, and the experience of the assessor indicating that there was a market for condominiums in the area, found that the highest and best use of such property was as a condominium. The property was, therefore, assessed as a condominium, and a value assigned for each individual unit for both the half year and the full year. This contrasted with appellant's conclusion that the highest and best use was as rental property and its valuation of the property using the income approach.

The assessments were appealed to the Maryland Tax Court. The evidence presented before the court revealed that there was no dispute between the parties as to the amount of work that had been completed up to the date of finality or the amount of work which remained to be done after that date in order that each unit be totally complete. The evidence revealed, however, that the parties sharply diverged as to the meaning or effect of that level of completion on the date the assessments were made. They also sharply disagreed as to the highest and best use of the subject premises and, consequently, as to the appropriate method of assessment of the property.

Appellant conceded that three of the residential units were completed as of January 1, 1982. It contended, however, defining "substantially complete" as when the units are habitable, i.e. when a use and occupancy permit would be obtainable, that the remaining residential units were not substantially completed by that date. According to appellant's evidence, those 29 units would not be substantially complete until the carpet was laid and that, as to each, it would take a crew of two or three persons between a week to ten days, depending upon the trade, to complete the work. Appellant conceded that it delayed the installation of carpet and appliances to permit purchaser selection and that some other items were not completed because of the risk of theft. According to appellant, of the 29 units not substantially complete on the date of finality, seven were completed between January 1 and July 1, 1982, ten between August and December 1982, and the remaining units were completed between January 1 and July 1, 1983.

Appellant also maintained that, since the project had not been successfully promoted as a condominium, the highest and best use of the subject property was as a rental project. Despite an expensive advertising campaign, no units were sold prior to January 1, 1982, and although additional funds were thereafter expended, no units were ever sold. Appellant concluded that the only feasible method for valuing the property was the income approach under which the income

from the project as an apartment complex would be capitalized.

Appellee's assessor testified as to the reasons she felt the building was substantially completed and that its highest and best use was as a condominium property. The assessor explained her valuation of the property as a condominium and her method of assessment. Her testimony was, with respect to the valuation, that she took the square foot selling price for each unit, the overall price, and reduced it by five percent. Because she felt that the asking price was too high, she further reduced the resulting figure by 20% for the 1982–83 year and by 30% for the preceding one-half year.

The tax court upheld the assessment. Relying on *Radin v. Supervisor of Assess.*, 254 Md. 294, 255 A.2d 413 (1969), the tax court found that all units were "substantially completed" on the finality date; the "building" was "under roof and its exterior plastering and woodwork are substantially complete, although not entirely". It further found that the highest and best use of the subject property, as of the finality date, was as a condominium. Although it acknowledged that no sales had been made during the eight months prior to January 1, 1982 and that a longer period of time would have been desirable, the court refused to consider rentals after that date. Finally, the court found that the only evidence as to the value of the property was that of the assessor and that that evidence, presumptively correct, had not been refuted.

The Circuit Court for Baltimore City affirmed. It too relied on *Radin* on the issue of substantial completion. Regarding the valuation issue, the court said:

... It's an unfortunate case where the builder or the owner, taxpayer made a mistake and made a poor investment. That condominiums were not the highest and best use for the property. That rentals were. The properties might indeed have been worth less than that. But there was a reasonable basis for that evaluation of $1,588,-

000.00 as of January 1, 1982. The court would no more disturb that because it later turned out that it was too high. I would increase it if it later turned out to be too low. It's a very unfortunate situation. I must say I do sympathize with the taxpayer here. But he made a bad investment. It turned out that the properties were not worth what he thought they were. But there was a reasonable basis to infer that they were worth that much. He, himself, thought so and since I find that the tax court proceeded under the correct law, I am also finding that there was credible evidence within the record from which the tax court could have reasonably inferred the assessments which they determined.

Appellant's appeal of the judgment of the circuit court presents two issues:

1. Did the lower court err as a matter of law in determining that a condominium unit with no plumbing fixtures in the bathroom or kitchen, no toilet, sink, bathtub or shower in the bathroom, no sink, dishwasher, stove or other amenities in the kitchen, no electrical fixtures, no heat or air conditioning units installed, no water, electricity or heat available, and no flooring completed, was substantially completed for real estate tax assessment purposes?

2. Was the Tax Court's finding on the valuation of each condominium unit supported by any substantial evidence in the record?

We too will affirm.

The standard of review applicable to decisions of the Tax Court is set out in Maryland Code Ann., art. 81, § 229(o):

In any case, the circuit court ... shall determine the matter upon the record made in Maryland Tax Court. The circuit court ... shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court ... may affirm, reverse, remand, or modify the order appealed from.

■ Under this section, the standard of review depends upon the nature of the Tax Court finding being reviewed. Interpreting *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985), we recently made the point, in *Comptroller of the Treasury v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986), that a three step analysis must be employed to the review of an agency decision:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." 302 Md. at 834, 490 A.2d 1296.

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inferences. *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *Id.* at 838, 490 A.2d 1296.

Thus, appellate review of Tax Court orders based upon an erroneous conclusion of law is expansive, that is, the appellate court may substitute its judgment for that of the Tax Court. *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. at 834, 490 A.2d 1296; *Comptroller of the Treasury v. World Book Childcraft International, Inc., supra,* 67 Md. at p. 438, 508 A.2d 148. Review is limited, however, where there is no error of law and the Tax Court's factual determinations are at issue. *Ramsay, Scarlett, supra; World Book, supra.* Under this scenario, the Tax Court's factual determinations must be upheld if there is substantial evidence in the record to support them. *Board of Educ., Mont. Co. v. Paynter,* 303 Md. 22, 34, 491 A.2d 1186 (1985); *Ramsay, Scarlett, supra; Balto. Lutheran High Sch. v. Emp. Sec. Adm.,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Supervisor of Assess. v. Carroll,* 298 Md. 311, 318, 469 A.2d 858 (1984); *Supervisor v. St. Leonard Shores Joint Ven.,* 61 Md.App. 204, 212, 486 A.2d 206, *cert. granted* 303 Md. 115, 492 A.2d 616 (1985). Yet a different test applies, whether applying the appropriate legal principle, a reasoning mind could have reached the conclusion reached by the agency, *Ramsay, Scarlett,* 302 Md. at 838, 490 A.2d 1296, when the issue involves a mixed question of law and fact. *Id.; Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77 (1977); *World Book, supra,* 67 Md.App. p. 439, 508 A.2d 148.

In order that we may apply the proper standard, we must first determine the nature of the Tax Court finding at issue *sub judice.*

### *"Substantially Completed"—Law, Fact, or Mixed*

The question whether and when new construction is to be assessed for tax purposes is governed by Md.Code Ann., art. 81, § 19(a)(1) (presently Md. Tax Property Code Ann. §§ 8–104 and 8–205), which provided:

(a) In general.—(1) In valuing and assessing real estate, the land itself and the building or other improvements thereon shall be valued and assessed separately; and

buildings or improvements not substantially completed on the date of finality, semiannual date of finality or quarterly date of finality should not be assessed at all. For the purposes of this appeal, the critical language is the undefined phrase, "substantially completed". The critical issue is not so much the meaning of the phrase as it is the essential nature of a finding by the Tax Court that new construction is or is not "substantially completed".

In *Radin v. Supervisor of Assess., supra,* the Court of Appeals was presented with the issue whether the trial judge was correct in his finding that "review of the testimony convinces this Court that 'such finding [by the Tax Court, of substantial completion] is supported by the evidence' ". *Id.,* 254 Md. at 299, 255 A.2d 413. At issue was whether a highrise apartment house in Montgomery County was substantially complete on the date of finality, an issue which required that § 19(a) be interpreted. Also involved was the interpretation of a Montgomery County Code provision which defined the term "substantially completed" as "when the building is under roof, plastered (or ceiled) and trimmed". *Id.,* 254 Md. at 296, 255 A.2d 413. The Maryland Tax Court, finding the building to have been substantially completed, affirmed assessments made by the supervisor of assessments, reasoning:

> [S]omething other than a final completion of the building was intended, otherwise the assessable date could have easily been equated with the time the certificate of final inspection and occupancy ... was issued. The words "substantially completed", even when considered from the standpoint of the acceptance of a building imply "that there remained uncompleted work that would require use of labor and materials;" *Baltimore County Department v. Henry A. Knott,* 234 Md. 417, 425 [199 A.2d 369] (1964). The case of *Shaughnessy v. Linguistic Society,* 198 Md. 446, 451 [84 A.2d 68] (1951) points out that the expression "substantial part" is not a term of "mathematical precision".

*Id.,* 254 Md. at 297–98, 255 A.2d 413. The circuit court affirmed the judgment of the Tax Court, and the Court of Appeals, in turn, affirmed the judgment of the circuit court. In doing so, the Court referred to *Skinner Drydock Co. v. Balto. City,* 96 Md. 32, 41–42, 53 A. 416 (1902) and *Hamburger v. Baltimore City,* 106 Md. 479, 68 A. 23 (1907) and pointed out that

> [t]he statutes (§ 19(a) of Art. 81 of the Code and § 84–7(f) of the Montgomery County Code) seem to have adopted the language in the Court's opinions and holdings in those two cases which determined the proposition that a building under construction is substantially completed for purposes of assessment for taxes when it is under roof and its interior plastering and woodwork are substantially, although not entirely, completed.

*Id.,* 254 Md. at 298, 255 A.2d 413. Moreover, the Court found that the Tax Court's judgment was not erroneous as a matter of law and that it was supported by substantial evidence in the record. *Id.,* 254 Md. at 299, 255 A.2d 413.

At issue in *Skinner* was whether a dock "was ... substantially completed or so nearly so as it can fairly be said that it was on October 1st a subject for taxation". *Id.,* 96 Md. at 42, 53 A. 416. Specifically pointing out that the dock "was practically completed with the exception of the gate and some dredging which was necessary to be done before using it", *Id.,* 96 Md. at 41, 53 A. 416, that the greater part of the cost had been expended, and that the dock had been in use "for some weeks" before the beginning of the year for which the assessment was made, the Court held that the dock was "substantially completed." In further support of its conclusion, the Court stated:

> If it was not assessable at that time by reason of what was yet to be done on it, then it would be a great temptation for property owners to postpone making some small part of improvements until after October 1st.

*Id.*

In *Hamburger,* a city ordinance authorized the assessment for tax purposes all new improvements "finished" on

October 1st of every year. It defined "finished" as "when plastering and inside wood-work are completed" *Id.,* 106 Md. at 481, 68 A. 23. Because it concluded that involved in the appeal was "a question of fact ... to be determined by the lower Court, which this Court is not authorized to review", the Court dismissed the appeal. *Id.,* 106 Md. at 482, 68 A. 23. It did, however, state its "conclusion on the merits of the case":

> We are of the opinion that the ordinance must be construed to mean new improvements are to be assessed when the plastering and inside wood-work are substantially completed by October 1st, and that this record shows they were in this instance. There was a formal opening of the building on November 1st, 1906—two months before the period began for which the taxes were to be paid and on October 6th the appellants began the installation of the store fixtures, although the building was not then entirely completed. $150,000 (the amount fixed by the Court at which the property was to be assessed) had actually been expended by October 1st, and while there was still some work to be done on the plastering and inside woodwork on and after that date, it was not of a character to justify us in holding that it was not completed within the meaning of the ordinance. The principles applied in *Skinner Dry Dock Co. v. Balto. City, supra,* is applicable here, and if this appeal was properly before us we would not hesitate to affirm the actions of the lower Court.

*Id.,* 106 Md. at 483–84, 68 A. 23.

In appellant's view, "[t]his segment of the case involves only a question of law, the relevant facts being conceded." It asserts that "the Maryland Courts have not heretofore determined what constitutes "substantially completed" in the context of art. 81, § 19(a)(i); *Radin* is distinguished as involving "only ... a factual determination"; *Skinner,* because it did not involve a dwelling, and *Hamburger,* because it involved a city ordinance long since repealed.

Thus, appellant, relying on a series of Florida cases,[2] argues that

> ... a condominium unit is substantially completed only when it can be used for the purposes for which constructed, even though additional work or material may be required for final completion. ... The mere fact that the roof was on the building, and inside plastering (none proposed), and woodwork substantially completed is inconclusive."

■ On the other hand, appellee perceives the ultimate issue on this aspect of the appeal—the application of the facts to the test of substantial completeness—to be a question of fact. First, it points out, we think correctly, that a question of law is not necessarily presented because the facts are undisputed. *See Ramsay, Scarlett, supra,* 302 Md. at 830, 837, 490 A.2d 1296. *See also Board of Educ., Mont. County v. Paynter, supra,* 303 Md. at 30, 491 A.2d 1186; *Balto. Lutheran High School v. Emp. Sec. Adm., supra,* 302 Md. at 661–62, 490 A.2d 701. Proceeding, appellee argues that *Radin, Skinner,* and *Hamburger* provide "ample guidance" for the resolution of the case *sub judice:*

> On a case by case basis, the fact finder must review those matters which tend to show the degree of completion: the expenditure of time and money, what work actually has been done and what needs to be done. With those relevant facts as the basis, it must then determine if the improvement is substantially completed.

Then, asserting that *Hamburger, Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A.2d 903 (1946), and *Radin* all

---

**2.** *John Henry Jones, Inc. v. Lanier,* 376 So.2d 450 (Fla.App.1979) (statute defined substantially completed as meaning the structure can be used for its intended purpose); *Sherwood Park Ltd., Inc. v. Meeks,* 234 So.2d 702 (Fla.App.1970), *aff'd sub. nom., Markham v. Sherwood Park Ltd.,* 244 So.2d 129 (Fla.1971) (a building is substantially complete when it can be put to use for which it was intended); *Culbertson v. Seacoast Towers East, Inc.,* 232 So.2d 753 (Fla.1970), *cert. denied* 236 So.2d 761 (Fla.1970) (occupancy is the single most telling indication of completion).

recognized that whether improvements have been substantially completed is a question of fact, appellee concludes that the proper standard of review—the substantial evidence test—was properly utilized by the circuit court.

We agree with appellee that, in *Hamburger, Skinner* and *Radin,* the Court of Appeals has provided a test for determining whether an improvement is substantially complete. There is no basis for distinguishing the cases simply because the exact factual scenario presented in this case has not heretofore been the subject of an appellate opinion. Nor may *Radin* validly be distinguished as being "no more than a restatement ... of the Montgomery County Ordinance, not applicable here." *See* p. 10–13, *supra.*

On the other hand, although mindful that the Court in *Hamburger* characterized the question, "whether the property was so far completed on the first day of October, 1906, as to be liable to assessment," as one of fact,[3] 106 Md. at 482, 68 A. 23, that the Court in *Wasena, supra,* opined that "[t]he question of substantial completeness is peculiarly one within the province of the taxpaying authorities", 188 Md. at 394, 52 A.2d 903 and that the facts are undisputed, we do not perceive the issue to be solely one of law or fact. *See Ramsay, Scarlett, supra,* 302 Md. at 837, 490 A.2d 1296; *World Book, supra,* 67 Md.App. at 439, 508 A.2d 148.

At issue in *Ramsay, Scarlett* was whether the determination that a business is unitary for tax purposes involves a factual analysis, applied in light of legal tests, or a question of law. This Court concluded that it was a question of law, to which the substitution of judgment standard applied.[3a]

---

**3.** The Court denoted, as a question of law, "whether under the ordinance ... these improvements could be assessed for the year 1907, if the plastering and inside woodwork were substantially, but not entirely completed" 106 Md. at 482, 68 A. 23. That question, not having been specifically addressed below, was not considered on appeal.

**3a.** *Comptroller of the Treasury v. Ramsay, Scarlett & Co.,* 58 Md.App. 327, 340, 473 A.2d 469 (1984), *reversed,* 302 Md. 825, 490 A.2d 1296 (1985).

The Court of Appeals disagreed and reversed, pointing out that

> "[t]he difference between the Comptroller's position, which the Court of Special Appeals adopted, and Ramsay Scarlett's position, which the tax and circuit courts adopted, is based essentially on differing views—not as to the law governing the case—but rather as to its proper application to the established evidence of record before the Tax Court.

*Id.,* 302 Md. at 837, 490 A.2d 1296. Then, finding no error of law, or failure to understand the substance of the appropriate tests, or any misapplication of them to the evidence, and that agency expertise was involved in the decision, the Court held:

> As we see it, whether a business is unitary or separate and distinct for tax purposes under § 316(c) is not solely a question of law; rather, the issue for purposes of appellate review under § 229(*o*) is governed by whether, in light of substantial evidence appearing in the record, a reasoning mind could reasonably have reached the conclusion reached by the Tax Court, consistent with a proper application of the unities and dependency tests. (citation omitted)

*Id.,* 302 Md. at 838, 490 A.2d 1296.

We recently reached a similar result in *World Book.* Applying the three step analysis mandated by *Ramsay, Scarlett* and, noting that "the tax court did not err as a matter of law in determining which statutes, and cases interpreting those statutes, governed", we held:

> As to the most critical question before the tax court, *i.e.,* World Book's duty to file, we believe that it is not a question of law but is more a mixed question of law and fact.

*Id.,* 67 Md.App. at 439, 508 A.2d 148.

■ Turning to the case *sub judice,* we find a similar conclusion is justified here—the determination of the Tax Court that the condominium was "substantially completed"

is a mixed question of fact and law; contrary to appellant's assertion to the contrary, the determination involved the application of the facts to the applicable legal test, and not the law governing that test. Therefore, the proper standard of review to be applied by the circuit court was "whether ... a reasoning mind could have reached the conclusion reached by the Tax Court consistent with a proper application of the [test for determining 'substantial completion']". *Ramsay, Scarlett,* 302 Md. at 838, 490 A.2d 1296.

■ As we have seen, the trial court found that the Tax Court applied the correct law and further found that there was substantial evidence in the record to support its factual conclusion. In so finding, it neither substituted its judgment for that of the Tax Court nor failed to pay proper deference to agency expertise; *Ramsay, Scarlett, supra,* 302 Md. at 837–38, 490 A.2d 1296; *Balto. Lutheran High School v. Emp. Sec. Adm., supra,* 302 Md. at 662–63, 490 A.2d 701; *World Book, supra,* 67 Md.App. at 440, 508 A.2d 148; rather, the trial court "reviewed the [Tax Court]'s decision in the light most favorable to the agency", and recognized that "decisions of administrative agencies are prima facie correct and carry with them the presumption of validity". *Balto. Lutheran High School v. Emp. Sec. Adm., supra,* 302 Md. at 662–63, 490 A.2d 701. We hold that the trial court applied the proper standard of review. There was no error.[4]

---

4. We decline appellant's invitation to rely on Florida authorities as a guide to the meaning of "substantially completed". As we have already indicated, Maryland precedent is clear; hence, there is no need to resort to out of state authorities for support. *See Spielman v. State,* 298 Md. 602, 609, 471 A.2d 730 (1984); *State v. Cohen,* 166 Md. 682, 688, 172 A. 274 (1934); *Thornton v. State,* 31 Md.App. 205, 209, 355 A.2d 767 (1976). Moreover, while it must be conceded that the prior Florida statute did not define "substantially completed", *See Sherwood Park, Ltd., Inc. v. Meeks,* 234 So.2d 702, 703 (Fla.App.1970) the statute presently in effect defines it as "the improvement or some self sufficient unit within it can be used for the purpose for which it

## *Valuation*

Appellant next contends that the assessment of the subject property was "arbitrary, capricious and erroneous". It points out that "[h]istorically one or more of three approaches, all recognized by the Court of Appeals of Maryland, are used to determine market value: (1) reproduction cost; (2) capitalization of income; and (3) comparative market data," and that none was used by appellee in this case. Thus, appellant complains that both appellee's assessment method—"equating asking price with market value"—and the assessment itself were unrealistic "in light of the neighborhood, and no units were sold, despite substantial and expensive marketing efforts". Moreover, appellant disputes appellee's determination of the highest and best use of the property, an essential element of the assessment process. See Md.Code Ann. art. 81, § 19(a).[5] In its view, reliance on appellant's having filed a condominium regime provides an insubstantial basis for assessing the property as a condominium. Finally, appellant argues that the only substantial evidence of value was that provided by the testimony of its expert, who used the income approach.

Maryland Code Ann. art. 81, § 14(b)(1)(i)[6] provides that for purposes of taxation, all real property to be assessed "shall be valued at its full cash value on the date of finality". Although the statute does not prescribe a method to be utilized by the taxing authority to determine "full cash value", defined by § 14(b)(1)(ii) as "current value," Maryland courts, recognizing that the assessment process is not an exact science, have held it permissible for the taxing authority to utilize various methods. *See Supervisor v. St. Leonard Shores Joint Ven.*, 61 Md.App. 204, 214–15, 486 A.2d 206 (1985). "The choice of a valuation method is

---

was constructed." *John Henry Jones, Inc. v. Lanier,* 376 So.2d 450, 452 (Fla.App.1979).

**5.** Presently codified at Md. Tax Property Ann.Code, §§ 8–104 and 205.

**6.** Presently codified as § 8–102(a) Md. Tax Property Code.Ann.

essentially a question of fact and, therefore, clearly within the expertise of the assessor, not the judiciary". *Id.* And if the method utilized is reasonable, *Fairchild Hiller v. Supervisor,* 267 Md. 519, 524, 298 A.2d 148 (1973); *Macht v. Dept. of Assess.,* 266 Md. 602, 608, 296 A.2d 162 (1972); *St. Leonard, supra,* 61 Md.App. at 215, 486 A.2d 206; *Brown v. Supervisor,* 43 Md.App. 153, 159, 404 A.2d 1083 (1979), great deference will be accorded the taxing authority, *Brown v. Supervisor, supra,* 43 Md.App. at 157–58, 404 A.2d 1083. So long as the ultimate figure represents the full cash value, the agency's calculations and factual conclusions will not be disturbed. *Id.* 43 Md.App. at 159, 404 A.2d 1083.

■ Our review is thus limited to determining whether substantial evidence in the record supports the agency decision. *Fairchild Hiller, supra,* 267 Md. at 521, 298 A.2d 148. The complaining party bears the burden to establish that the assessment was in error. *Id.* 267 Md. at 523, 298 A.2d 148.

■ Appellee's assessor testified before the Tax Court concerning the basis for her conclusion that the highest and best use of the property was as a condominium. Appellant's expert, on the other hand, opined, giving his basis, that it was as an apartment complex. Despite the stark contrast between the testimony of the two experts, the assessor's testimony provided substantial evidence on which the Tax Court could base its conclusion that the property's highest and best use was as a condominium. Given her testimony, it could not be said that a reasoning mind could not have reached the conclusion the Tax Court reached. *See Fairchild Hiller, supra.*

■ Once the Tax Court determined that the highest and best use was as a condominium, appellant's expert's opinion as to valuation was no longer relevant to, or substantial evidence of, the pertinent issue before the court— the value of the property as a condominium for taxation purposes. The only evidence relevant to that issue was the

testimony of the assessor. Appellant thus failed to meet its burden of demonstrating that the assessment was erroneous. But, in any event, the assessor's testimony revealed the method of assessment she utilized and the reasons therefor, and the Tax Court concurred with that assessment. Again, the question thus is whether a reasoning mind reasonably could have reached, as the Tax Court did, the conclusion that the assessment method chosen was reasonable and that the resulting assessment represented the property's full cash value. We, as the trial court did, think so.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.